UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

STEVEN RIDENOUR,

Plaintiff,

v.

NEVADA BELL TELEPHONE CO.,
d/b/a AT&T NEVADA, *et al.*,

Defendants.

Case No. 3:22-cv-00004-MMD-CSD

ORDER

## I.    SUMMARY

*Pro se* Plaintiff Steven Ridenour brings this action against Defendant Nevada Bell Telephone Company ("AT&T") for the alleged sexual harassment he endured from his supervisor and Defendant Communications Workers of America Union Local 9413 (the "Union") for its alleged mishandling of his sexual harassment grievance. (ECF No. 1-2.) Before the Court are AT&T and the Union's[1] motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[2] (ECF Nos. 19, 24.) Because Ridenour has failed to plead facially plausible claims, and as further explained below, the Court will grant AT&T's motion but will allow Ridenour to amend some of his claims. Because Ridenour's claims against the Union are barred by the statute of limitations, and as further explained below, the Court will grant the Union's motion.

///

///

///

---

[1]The Union filed a prior motion to dismiss (ECF No. 13), which the Court denies as moot because it has been replaced by the Union's amended motion (ECF No. 19).

[2]Ridenour only filed a response to AT&T's motion. (ECF No. 31.)

## II.    BACKGROUND[3]

Ridenour was formerly a technician at AT&T and was represented by the Union.[4] (ECF No. 1-2 at 4, 10.) He alleges that his direct manager, Edinar "Eddy" Copeland, sexually harassed him on two separate occasions. (*Id*. at 4-5.) Ridenour claims that Copeland sent him flirtatious messages asking him out for drinks on the evenings of November 21, 2017, and December 14, 2017. (*Id*.) Ridenour did not respond to her messages. (*Id*.) Copeland subsequently exhibited a "complete 180 degree change in tone, attitude, [and] any sense of friendliness." (*Id*. at 6.) Despite previously praising Ridenour's work, Copeland began initiating investigations against Ridenour in January 2018 for violating company policy, customer mistreatment, and failure to perform his duties. (*Id*. at 5-7.) Ridenour also heard from a coworker that Copeland was "butt-hurt" from his rejection and was "trying to get [Ridenour] in trouble." (*Id*. at 8.) Following these investigations, Ridenour was suspended several times. (*Id*. at 7.)

Ridenour filed two grievances on January 29, 2018, regarding his suspensions. (*Id*. at 9.) He also had a three-hour phone conversation on January 30 with Union employee, Petula Vierja, and reported the inappropriate text messages from Copeland to her. (*Id*. at 10.) Vierja allegedly told Ridenour that Copeland "crossed the line," that his job was safe, that he would be receiving backpay plus a 50K "special package," and that Copeland's job was in jeopardy. (*Id*.) She also informed Ridenour that another Union employee, Jose Ruiz, would be handling his case. (*Id*. at 10-11.) Ridenour subsequently spoke to Ruiz and forwarded him Copeland's text messages. (*Id*. at 11.) During their conversation, Ruiz disclosed that Copeland was a family friend but reassured Ridenour that the relationship would not impact his investigation. (*Id*.)

[3]The following allegations are adapted from the Complaint unless otherwise indicated. (ECF No. 1-2.)

[4]The Court notes that Ridenour's arguments and allegations are, at times, difficult to follow and require the Court to construe them as stated herein.

1           After Ridenour's conversations with the Union employees, Copeland attempted

2   to impose additional stipulations on Ridenour regarding where he could be dispatched

3   and whether he was allowed to go home for lunch, and then continued his suspension

4   because "they need[ed] more time to investigate." (*Id*. at 11-12.) Ridenour was finally

5   allowed to return to work in late February. (*Id*. at 13.) Copeland was eventually

6   transferred to another location and replaced by managers Steve France and Greg

7   DeFehr. (*Id*. at 15.) DeFehr allegedly launched yet another investigation against

8   Ridenour for being "out of route without previous manager approval," which Ridenour

9   alleges was a cover-up and retaliation for the "moral hazard created by manager

10   Copeland's sole actions." (*Id*. at 15-16, 21.) The new managers then fired Ridenour on

11   March 22, 2018. (*Id*. at 17.) Ridenour contacted Ruiz immediately following his firing,

12   but Ruiz informed Ridenour that he was on his own. (*Id*. at 18.) Ridenour suggests that

13   Ruiz's personal relationship with Copeland and offense taken by Ruiz regarding

14   Ridenour's allegedly derogatory comments about Mexican individuals resulted in the

15   lack of necessary intervention. (*Id*. at 18-20.)

16           Ridenour allegedly filed a charge of discrimination with the Nevada Equal Rights

17   Commission ("NERC"), which was closed in July 2021, and a charge with the U.S.

18   Equal Employment Opportunity Commission ("EEOC"), which was closed around

19   August 2021.[5] (ECF Nos. 24 at 10, 31 at 2.) Ridenour then filed a lawsuit in the Second

20   Judicial District Court of the State of Nevada against AT&T and the Union, asserting the

21   following claims in his Complaint: (1) sexual harassment (AT&T); (2) fraud (AT&T); (3)

22   breach of duty of fair representation (the Union); and (4) breach of contract (AT&T).

23   (ECF No. 1-2 at 20-24.) Defendants removed this action. (ECF No. 1.)

24   ///

25

26

27          [5]Although not explicitly raised in Ridenour's Complaint, details regarding
Ridenour's EEOC and NERC claims were introduced in AT&T's motion to dismiss and
Ridenour's response. (ECF Nos. 24, 31.) For the purposes of this order, the Court only

28   takes the facts in the Complaint as true, but also considers these clarifying details when
deciding whether leave to amend should be granted.

1    ### III.    LEGAL STANDARD

2              A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

3    relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must

4    provide "a short and plain statement of the claim showing that the pleader is entitled to

5    relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

6    While Rule 8 does not require detailed factual allegations, it demands more than "labels

7    and conclusions" or a "formulaic recitation of the elements of a cause of action."

8    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual

9    allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at

10    555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

11    matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

12    (quoting *Twombly*, 550 U.S. at 570).

13              In *Iqbal*, the Supreme Court of the United States clarified the two-step approach

14    district courts are to apply when considering motions to dismiss. First, a district court

15    must accept as true all well-pleaded factual allegations in the complaint; however, legal

16    conclusions are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678. Mere

17    recitals of the elements of a cause of action, supported only by conclusory statements,

18    do not suffice. *See id.* Second, a district court must consider whether the factual

19    allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is

20    facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a

21    reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at

22    678.

23              Where the complaint does not permit the Court to infer more than the mere

24    possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the

25    pleader is entitled to relief." *Id*. at 679 (alteration in original) (quotation marks and

26    citation omitted). That is insufficient. When the claims in a complaint have not crossed

27    the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*,

28    550 U.S. at 570. Dismissal of a complaint without leave to amend is only proper when it

4

1
2
3

is clear the complaint could not be saved by any amendment. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016); *see also* Fed. R. Civ. P. 15(a)(2) (instructing district courts to "freely give leave" to amend).

4

**IV.    DISCUSSION**

5
6
7
8
9
10
11
12
13

The Court will first dismiss Ridenour's sexual harassment claims, including his Title VII hostile work environment and quid pro quo claims, and his state law claim, because they are insufficiently pled and may not be cured by amendment. The Court will then address Ridenour's allegations of retaliation and provide him with the governing legal standard, to the extent he wishes to assert a claim for retaliation in the amended complaint. Next, the Court will dismiss Ridenour's fraud claim because it is not pleaded with the requisite particularity, but the Court will grant him leave to cure the deficiency. The Court will finally dismiss Ridenour's section 301 hybrid claim because Ridenour failed to file a response and because it is time-barred.

14
15

**A.    Title VII Hostile Work Environment and Quid Pro Quo Claims & State Law Sexual Harassment Claim**

16
17
18
19
20
21
22
23

To start, Ridenour failed to plead a facially plausible claim for hostile work environment under Title VII. AT&T argues, in part, that dismissal is proper because Copeland's text messages "had no sexual connotations and merely mentioned alcohol consumption," which fell "well short of being severe or pervasive enough to alter the conditions of [Ridenour's] employment." (ECF No. 24 at 6-7.) Ridenour counters, in part, that Copeland's actions were sufficiently pervasive or severe because they were the sole reason for his firing and accuses AT&T of victim-shaming him. (ECF No. 31 at 3-4.) The Court agrees with AT&T.

24
25
26
27
28

Title VII of the Civil Rights Act of 1964 prohibits discrimination in the workplace on the basis of sex, and "[s]exual harassment is a species of gender discrimination." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (citing 42 U.S.C. § 2000e-2(a)(1)). Sexual harassment generally "falls into two major categories: hostile work environment and quid pro quo." *See id*. (citation omitted). To show that he was subjected to a hostile work environment because of sex, the plaintiff must allege that

"(1) he was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021) (citation omitted). A hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted). When determining whether an environment is sufficiently hostile, the Court "must consider all the circumstances, including frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (citations and quotation marks omitted).

Accepting his allegations as true, Ridenour premises his hostile work environment claim on two separate incidents where Copeland sent him flirtatious text messages in the evening. (ECF No. 1-2 at 4-5.) On November 21, 2017, Copeland texted Ridenour from her work cell phone asking what they were doing for the evening, followed by several martini glass emojis. (*Id*. at 4.) According to Ridenour, Copeland sent these texts "in rapid succession in under 1 minute." (*Id*.) She texted Ridenour again on December 14, 2017, when Ridenour was completing a repair job and Copeland was off the clock, asking Ridenour how it was going, telling him she only knew one person at the party she was attending, and saying that her "#1 thing" was food. (*Id*. at 5.) Ridenour alleges that Copeland's text messages made him feel uncomfortable, and he did not respond to her advances. (*Id*. at 4-5.)

Even assuming Copeland's actions were sexual in nature and unwelcome, the Court finds that the conduct here is not sufficiently pervasive to violate Title VII. *See id*. The alleged harassment was limited to two isolated instances that were weeks apart and were of short duration. (*Id*.) Ridenour does not allege that Copeland made any

1    advances toward him between November 21 and December 14, or after December 14,

2    and he admits that her texts on both evenings were short and quick, sent in "rapid

3    succession" within minutes. (*Id.*) *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110-

4    11 (9th Cir. 2000) (offensive comments "mainly made in a flurry" on one day do not

5    constitute a hostile work environment); *Alioto v. Assoc. Exch. Inc.*, 482 F. App'x 222,

6    223 (9th Cir. 2012) (conduct that is "episodic at best" is "insufficient to establish a prima

7    facie case" for hostile work environment). Hence, Ridenour failed to plausibly allege that

8    Copeland's conduct was pervasive enough to violate Title VII.

9    　　　　Because there were only two isolated incidents, they must be extremely severe

10   to support a claim for hostile work environment. *See Fried*, 18 F.4th at 648 (noting that

11   "for a single incident to suffice, it must be extremely severe") (citations and quotation

12   marks omitted); *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (explaining that "the

13   required showing of severity or seriousness of the harassing conduct varies inversely

14   with the pervasiveness or frequency of the conduct") (citations omitted). Even construed

15   liberally due to Ridenour's *pro se* status, Copeland's text messages, while inappropriate

16   between a supervisor and subordinate, fall short of this threshold. At most, Copeland's

17   text messages suggest that she wanted to have drinks with Ridenour on November

18   21—there was no physically threatening contact, abusive language, explicit sexual

19   propositions, or overtly sexual advances by Copeland. (ECF Nos. 1-2 at 4-5, 24 at 5-9.)

20   *See Christian*, 984 F.3d at 809 (citations omitted).

21   　　　　Copeland's messages are more akin to an offensive utterance or offhand

22   comment, which the Supreme Court and Ninth Circuit have held to be insufficient to

23   violate Title VII. *See Faragher*, 524 U.S. at 788 (noting that "simple teasing . . . offhand

24   comments, and isolated incidents (unless extremely serious) will not amount to

25   discriminatory changes in the terms and conditions of employment") (citations and

26   quotation marks omitted); *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998 (9th

27   Cir. 2010)  ("A violation is not established merely by evidence showing sporadic use of

28   abusive language, gender-related jokes, and occasional teasing") (citations and

1   quotation marks omitted). Although Ridenour claims that the alleged harassment

2   impacted his work performance because Copeland initiated investigations against him,

3   the two instances of text messages nevertheless fall within the type of isolated conduct

4   that is insufficient to be severe or pervasive. (ECF Nos. 1-2 at 6-7, 24 at 6.) Thus, when

5   viewed under the totality of the circumstances, Ridenour failed to sufficiently allege

6   conduct that was severe or pervasive enough to violate Title VII and his hostile work

7   environment claim must be dismissed with prejudice. *See Christian*, 984 F.3d at 809.

8       The Court likewise dismisses Ridenour's Title VII quid pro quo claim with

9   prejudice because the conduct that he relies on—the text messages—do not convey or

10  even suggest that Copeland ever explicitly or implicitly demanded a sexual favor in

11  exchange for job advancement or the absence of a job detriment at AT&T. (ECF Nos. 1-

12  2 at 4-21, 24 at 9.) *See Holly D. v. Cal. Inst. of Tech*., 339 F.3d 1158, 1169 n.15 (9th

13  Cir. 2003*); Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007). As

14  explained above, at most, the text messages reveal that Copeland wanted to go out for

15  drinks with Ridenour and nothing more. (ECF Nos. 1-2 at 4-5, 24 at 9.)

16      It is unclear from the Complaint whether Ridenour is asserting a claim for sexual

17  harassment/discrimination under Nevada law. (ECF No. 1-2.) *See* NRS § 613.330. To

18  the extent Ridenour relies on Nevada law, his state sexual harassment/discrimination

19  claims fail for the same reasons.[6] The Nevada Supreme Court has held that the state

20  anti-discrimination statute, NRS § 613.330, is "almost identical" to Title VII, and that

21  courts should apply the same analysis to the statutes. *See Apeceche v. White Pine

22  Cnty*., 615 P.2d 975, 977 (Nev. 1980); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005);

23  *Complete Care Med. Ctr. v. Beckstead*, 466 P.3d 538 (Nev. 2020). Because the

24  allegations supporting Ridenour's sexual harassment and discrimination claims,

25  accepting them as true, do not establish a violation of Title VII, his analogue state law

26  claims are similarly deficient as a matter of law.

27

28      [6]Because the Court dismisses the state law sexual harassment/discrimination claim, the Court declines to address AT&T's argument that this claim is barred by the statute of limitations. (ECF No. 24 at 9-10.)

**B.      Title VII Retaliation & State Law Retaliation Claims**

Throughout the Complaint, Ridenour mentions that he was retaliated against by Copeland and the new managers who replaced her. (ECF No. 1-2.) For instance, Ridenour alleges that a coworker told him Copeland was "butt-hurt" from his rejection and trying to get him in trouble. (*Id*. at 8.) However, Ridenour does not expressly plead a claim for retaliation under his causes of action in the Complaint. (*Id*. at 20-25.) The Court grants Ridenour leave to amend[7] if he wishes to assert a claim for retaliation in the amended complaint.

Because of Ridenour's *pro se* status, the Court will briefly explain the laws governing retaliation in the employment context. Title VII makes it unlawful for an employer to discriminate against any employee "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). If Ridenour believes he suffered retaliation in violation of Title VII, he must allege that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *See Brooks*, 229 F.3d at 928. The opposed practice need not actually be unlawful or violate Title VII, as long as Ridenour had a reasonable belief that the conduct was unlawful. *See Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (citations omitted); *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021).

Similarly, Nevada law prohibits retaliation. NRS § 613.340(1) makes it "an unlawful employment practice for an employer to discriminate against any of his or her employees . . . because the employee . . . has opposed any practice made an unlawful employment practice . . . or because he or she has made a charge, testified, assisted or

---

[7]In his response, Ridenour requests leave to amend his Complaint if the Court deems it proper or necessary. (ECF No. 31 at 4.)

1   participated in any manner in an investigation, proceeding or hearing."[8] However, any

2   claim that Ridenour asserts in an amended complaint should be clear and should

3   indicate which law he is alleging that AT&T violated.

4           **C.    Fraud**

5           Next, AT&T argues, in part, that dismissal is appropriate for Ridenour's fraud

6   claim because he fails to meet the heightened pleading standard under Rule 9(b). (ECF

7   No. 24 at 10-11.) The Court agrees with AT&T.

8           Rule 9(b) provides that when a party alleges fraud, the party must "state with

9   particularity the circumstances constituting fraud." The party must include the "the who,

10  what, when, where, and how of the misconduct charged." *Becerra v. Dr. Pepper/Seven*

11  *Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted); *see also Depot, Inc. v.*

12  *Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (noting that "the complaint

13  must include an account of the time, place, and specific content of the false

14  representations as well as the identities of the parties to the misrepresentations")

15  (citations and quotation marks omitted).

16          Construed liberally, Ridenour alleges that Copeland used a repair job on

17  December 14th as a "knock-out punch" to commit fraud a month later, on January 15th.

18  (ECF No. 1-2 at 22.) Ridenour claims that Copeland signed off on the resolution of a

19  job, he followed her directive and closed out the job, and she "then denied any

20  connection to the record." (*Id*.) Ridenour alleges that she later accused him of customer

21  mistreatment a month later and suspended him for five days, which caused loss of

22  income and a mark on his record. (*Id*. at 23.) However, Ridenour fails to specify *where*

23  _____

24          [8]The Court notes that Ridenour's Complaint is difficult to follow because he
    primarily lists case law under many of his causes of action and condenses all of his
    factual allegations in the general background section. (ECF No. 1-2.) In the amended

25  complaint, Ridenour must include, under *each* cause of action, all relevant factual
    allegations supporting *each* claim. The Court cautions Ridenour to abide by Rule 8's

26  requirements, where the pleading must contain "a short and plain statement of the claim
    showing [Ridenour] is entitled to relief," and exclude unnecessary information, in order

27  to avoid dismissal. *See Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013), *cert.*
    *denied*, 574 U.S. 815 (2014); *see also McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th

28  Cir. 1996).

1   these alleged misrepresentations by Copeland occurred, and *how* Copeland utilized the

2   repair job to commit fraud. *See Becerra*, 945 F.3d at 1228. For instance, it is unclear

3   what Ridenour meant when he claimed that the December 14 repair job was a "knock-

4   out punch," and he fails to explain *how* the December 14 repair job was used to

5   suspend him. (*Id*. at 22-23.) *See id*. It is also unclear what the connection is between

6   the December 14 job and Copeland's subsequent accusation of customer mistreatment

7   against Ridenour. (*Id*.) *See id*. If Ridenour chooses to file an amended complaint, he

8   must clarify these ambiguities for the claim to proceed. (*Id*.) The Court therefore

9   dismisses Ridenour's fraud claim without prejudice and with leave to amend.

10          **D.      Section 301 Hybrid Claim**

11          Finally, the Union contends that the Court should dismiss Ridenour's breach of

12   duty of fair representation claim against it because the claim is barred by the statute of

13   limitations and because Ridenour failed to file a response to the motion. (ECF Nos. 19,

14   33.) The Court agrees.

15          Ridenour appears to be bringing a hybrid claim under section 301 of the Labor

16   Management Relations Act ("LMRA") against the Union for breach of duty of fair

17   representation and against AT&T for breach of contract. (ECF No. 1-2 at 23-25.) *See* 29

18   U.S.C. § 185(a). To prevail in a hybrid action, the plaintiff must prove that both "the

19   employer breached the collective bargaining agreement" *and* the "labor union breached

20   its duty of fair representation." *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 987

21   (9th Cir. 2007) (citation omitted). The claims against the employer and the union are

22   "inextricably interdependent." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164

23   (1983) (citations omitted). The statute of limitations for a hybrid action is six months and

24   "the six-month period generally begins to run when an employee knows or should know

25   of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co*.,

26   793 F.2d 1502, 1509 (9th Cir. 1986) (citations omitted).

27          To start, the Court finds that dismissal of Ridenour's claim against the Union is

28   proper because he never filed a response to the Union's motion to dismiss. *See* LR 7-

2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion"). But even if Ridenour had responded, dismissal would still be proper because the Union correctly noted that Ridenour's duty of fair representation claim exceeded the statute of limitations. (ECF No. 19 at 3.)

Ridenour alleges that the Union mishandled his sexual harassment grievance by failing to intervene and allowing him to be continuously sexually harassed and retaliated against by Copeland and the other managers at AT&T. (ECF No. 1-2 at 23-25.) It is apparent from the face of the Complaint that Ridenour knew or should have known about the Union's breach some time in 2018—when the Union steward sat quietly and "offered no resistance" when Copeland and DeFehr badgered Ridenour during a suspension meeting, when Ruiz informed Ridenour of his personal friendship with Copeland, when Ruiz failed to give Ridenour a clear response when he asked for updates on the sexual harassment investigation, or at the very latest, when Ruiz informed Ridenour that he was on his own after his firing. (*Id*. at 9, 11, 13, 18.) *See Jablon*, 614 F.2d at 682; *Galindo*, 793 F.2d at 1509. However, Ridenour did not file his lawsuit until November 2021, which is more than three years after he first knew or should have known about the alleged breach by the Union, and which exceeds the six-month statute of limitations. (*Id*. at 2.) *See Galindo*, 793 F.2d at 1509.

The Court therefore dismisses Ridenour's breach of duty of fair representation claim against the Union with prejudice. Since the claims against the Union and AT&T are "inextricably interdependent" in a hybrid action, the Court must also dismiss Ridenour's breach of contract claim against AT&T. (*Id*. at 23-25.) *See DelCostello*, 462 U.S. at 164; *see also Tapia v. Local 11 Hotel Emps. & Rest. Emps. Union, AFL-CIO*, 11 F. App'x 941 (9th Cir. 2001) (finding that the employee's claim against the company will fail because he could not state a timely claim against his union).

///

1    **V.     LEAVE TO AMEND**

2          Although the Court grants Ridenour leave to amend, it does not grant him leave

3    to amend in any way that he sees fit. Ridenour has leave to amend only his fraud and

4    retaliation claims.

5          If Ridenour chooses to file an amended complaint, he is advised that the

6    amended complaint supersedes (replaces) the original Complaint and, thus, must be

7    complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

8    1542, 1546 (9th Cir. 1989). Ridenour's amended complaint must contain all claims,

9    Defendants, and factual allegations that he wishes to pursue in this lawsuit. Ridenour

10   may not rely on any information in the original Complaint that he later omits from the

11   amended complaint.

12   **VI.    CONCLUSION**

13         The Court notes that the parties made several arguments and cited to several

14   cases not discussed above. The Court has reviewed these arguments and cases and

15   determines that they do not warrant discussion as they do not affect the outcome of the

16   issues before the Court.

17         It is therefore ordered that Defendant Nevada Bell Telephone Company's motion

18   to dismiss (ECF No. 24) is granted. However, the Court gives Ridenour leave to amend

19   to assert claims only as to Defendant Nevada Bell Telephone Company as discussed

20   herein. If Ridenour decides to file an amended complaint—to the extent he is able to

21   cure the deficiencies discussed herein—he must do so within 30 days of the date of

22   entry of this order. Ridenour's failure to file an amended complaint within 30 days will

23   result in dismissal of this action with prejudice.

24         It is further ordered that Defendant Communications Workers of America Union

25   Local 9413's amended motion to dismiss (ECF No. 19) is granted.

26   ///

27   ///

28   ///

13

1         It is further ordered that Defendant Communications Workers of America Union

2    Local 9413's original motion to dismiss (ECF No. 13) is denied as moot.

3         DATED THIS 5th Day of August 2022.

4

5                                                          
MIRANDA M. DU

6                                                          
CHIEF UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28