STEVEN RIDENOUR
5614 Churchill Green Dr.
Sparks, NV 89436
775.815.8501
Ride777@hotmail.com

STEVEN RIDENOUR, IN PRO PER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| STEVEN RIDENOUR | Case No.: 3:22-cv-00004-MMD-CSD |
| Plaintiff(s), | **(AMENDED) COMPLAINT FOR A CIVIL CASE** |
| vs. | **Request for Jury Trial: Yes** |
| NEVADA BELL TELEPHONE CO, | |
| DBA AT&T NEVADA | **DATE:  9-4-2022** |
| Defendant(s). | |

**COMPLAINT**

Plaintiff, STEVEN RIDENOUR, in proper person, complains against Defendant, NEVADA BELL TELEPHONE COMPANY, DBA AT&T NEVADA.

**I.   PARTIES**

1. Plaintiff, STEVEN RIDENOUR, (hereinafter "Plaintiff") is an individual who is currently, and was at all relevant times herein, a resident of the State of Nevada, County of Washoe, City of Sparks.

2. Defendant, NEVADA BELL TELEPHONE CO, DBA AT&T NEVADA, is a corporation organized and existing by virtue of the laws of the State of Nevada, and may be served process by service upon its registered agent, C T Corporation System, 701 S. Carson St. Suite 200, Carson City, Nevada 89701.

3. All of the acts and/or failures to act alleged herein were duly performed by and/or are attributable to defendants, individually or acting by and through their agents and employees. Said acts and/or failures to act were within the scope of any agency or employment or were ratified by defendants.

4. The names and capacities, whether individual, corporate, associate or otherwise, of defendants and/or their alter egos sued herein as Nevada Bell Telephone Co, DBA AT&T Nevada, are presently unknown, and Plaintiff will amend this complaint to insert the name(s) when ascertained.

## II.   JURISDICTION AND VENUE

5. Plaintiff seeks damages which, exclusive of attorney fees and costs, exceed $15,000.

6. Defendant is either a Nevada company doing business in Washoe County, Nevada or foreign company with offices and/or doing business regularly in Washoe County, Nevada.

7. This Court has subject matter jurisdiction over this action and specific personal jurisdiction over the parties.

8. Venue is proper in the Court pursuant to NRS 13.040.

## III.   STATEMENT OF CLAIM

9. Plaintiff wishes to assert a claim for Retaliation under NRS. 613.340, which states that it is "an unlawful employment practice for an employer to discriminate against any of his or her employees bc the employee has opposed any practice made an unlawful employment

practice, or bc he or she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing."

10. Plaintiff entered into a "protected activity" on January 29th, 2018 when plaintiff submitted two separate grievances (to union steward, Thomas Golding) pertaining to the two separate cases brought against him on January 15th.

11. Plaintiff was protected under NRS 613.340, on Jan. 30th, when he discussed sexual harassment claim with union employee, Petula Vierja, pertaining to manager Copeland's violation of the company policies on Personal Relationships & Sexual Harassment from text messages sent to plaintiff on Nov. 21st, 2017 at the end of his shift, approx.. 7-8pm.

12. Plaintiff claims Retaliation for 10 days suspension issued on February 12th by manager Copeland. [Retaliation #1]

13. Plaintiff claims Retaliation and Fraud by manager Greg DeFehr on Feb. 26th @ 3:30pm, 2018. [Retaliation #2/Fraud #1]

14. Plaintiff claims Retaliation and Fraud by manager Greg DeFehr on March 1st. [Retaliation #3/Fraud #2]

15. Plaintiff claims Retaliation and Fraud on Defendant and managers Greg DeFehr and manager Steve France for adverse employment act of being terminated on March 22nd, 2018. [Retaliation #4/Fraud #3]

16. Plaintiff claims Fraud by manager Copeland on the evening of December 14th, 2017. [Fraud #4]

17. Plaintiff claims Fraud by manager Copeland on the morning of Jan. 4th, 2018. [Fraud #5]

18. Plaintiff claims Fraud by manager Copeland on the morning of Jan. 8th, 2018. [Fraud #6]

19. Plaintiff claims Fraud by manager Copeland on the morning of Jan. 15th, 2018. [Fraud #7]

20. Plaintiff claims Fraud and Retaliation by manager Copeland and manager Greg DeFehr on the morning of Jan. 29th. [Retaliation #5/Fraud #8]

### IV.   EXPLANATION OF CLAIMS

Note: All Retaliation claims begin on and after Jan. 29th, 2018, when Plaintiff began his protected activity status per NRS 613.340, and all Fraud claims began Jan. 15th, 2018.

Retaliation #1, on Feb. 12th, 2018, plaintiff was at home on suspension and reported to the Reno yard 11am where manager Copeland added an additional 10 days of suspension where she stated "they need more time to investigate."

Manager Copeland had been made aware of the fact that Plaintiff was working through his union representatives to inquire about her violations of the company's policies and was retaliating as a result.

Retaliation #2/Fraud #1 by manager Greg DeFehr on Feb. 26th 2018 @ 3:30pm.

On Feb. 26th, 2018, plaintiff Ridenour was returned to duty from 30 days suspensions by manager Copeland and manager Greg DeFehr.

In the same meeting manager Copeland excused herself and manager Steve France took over as plaintiff Ridenour's new manager.

As plaintiff Ridenour had just been returned to duty, manager Greg DeFehr informed Ridenour that he was to read 3 paper pamphlets on company policies.

Mgr. DeFehr also stated that he had emailed the links to 3 online trainings to Ridenour, and that he would find the links in his work email.

Manager DeFehr did not inform Ridenour that he had changed Ridenour's passwords on his devices.

Manager DeFehr informed plaintiff Ridenour that he was not to dispatch any jobs that day, the 26th/Feb.

Plaintiff Ridenour was re-issued his badge/access door & gate cards, along with his work cell phone and work iPad.

Manager DeFehr approved plaintiff Ridenour to complete the online trainings from home. Manager DeFehr instructed Ridenour that when he completed the 3 online trainings that he was to forward

COMPLAINT
- 4 -

the screenshots or verifications to manager Steve France, who Ridenour had now been re-assigned to.

When Ridenour arrived home after using his 15 minute break to drive there, he quickly discovered that both of his passwords for his devices had been changed.

Plaintiff Ridenour then spent the next hour and 15 minutes on the phone w/ TSC (tech services center) receiving assistance in resetting both passwords.

Ridenour, during the course of the phone call, was informed that both passwords had been changed the previous day.

Upon gaining access to his work email, Ridenour located the links to the online trainings, but also discovered 2 emails that had been sent to his work email, but addressed to Greg DeFehr. They were "auto-reply" messages "thanking" manager DeFehr for using the "automated password reset option."

Mgr. DeFehr not sharing that Ridenour's passwords had been changed was a subtle retaliation, NRS. 613.340.

March 1st, 2018 @ beginning of shift @ 11am, Retaliation #3 & Fraud #2.

Manager DeFehr accused plaintiff of being out of route and opened a new "investigatory" on Feb. 26th.

This constitutes fraud as plaintiff was specifically ordered to 'not' dispatch on any jobs/tickets, but to complete admin work on his work iPad and was given permission to take them home to be used for that purpose, to work from home.

Retaliation #4/Fraud #3. March 22nd, 2018 @ beginning of shift, managers Greg DeFehr & Steve France terminated plaintiff's employment.

Plaintiff was given the reason of being out of route on Feb. 26th, 2018.

Plaintiff was not out of route as plaintiff was given permission to work from home on wireless devices.

COMPLAINT
- 5 -

Fraud #4, December 14th, 2017, @ approx.. 7:30-8:15pm. Mgr. Copeland had first texted, then called plaintiff on his work cell phone. Copeland was off the clock.

Plaintiff explained to her that he was on a repair job and had finished troubleshooting and would be needing to find out who the Duty Manager was for the evening so he could contact them and request an approval to create a helper ticket to have I&R come out in the morning to recondition the 2nd line of a bonded pair, to get the customer back in service.

After discussing the semantics, manager Copeland instructed Ridenour to send over the request for the helper ticket to her, upon which Ridenour questioned her. Bc 1) she was off duty, and 2) he shared w/ her that the previous all-tech Friday morning meeting all technicians had been instructed not to ask their managers to create "helpers" anymore, only that they could approve them or not.

"Eddy," manager Copeland, informed plaintiff Ridenour that she had her iPad on her person and that he should send the approval request, to which he did.

Manager Copeland approved the request to create the helper ticket.

When plaintiff Ridenour began to have issues w/ his work iPad (glitching and freezing in between screens), mgr. Copeland offered to help create the helper ticket since she was already logged-in to AT&T's internal OS, WFE (Work Force Engine), she said, (paraphrasing) "hold on, let me try."

Manager Copeland would later deny same activity.

Fraud #5, Manager Copeland suddenly changed her tone and attitude toward technician/plaintiff Ridenour beginning the morning of Jan. 4th and was lecturing him on his efficiency and using a very course tone where previous there had been no existence of any tension between Manager Copeland and plainfiff.

She continued on the phone, and between texting and phone call duration, had used approximately 45 minutes of Ridenour's 8 hour work shift by keeping him tied-up w/ conversation while he sat at the crossbox on Pyramid across from the Scolari's, unable to perform his duties/wiring up the job, while lecturing him on his efficiency and making better use of his time.

COMPLAINT
- 6 -

1

2  Fraud #6, Manager attempted to then meet plaintiff Ridenour at his first job unannounced, hoping to
3  catch him being tardy, to which she did not. That was the morning of Jan. the 8th, 2018.

4

5  Fraud #7, the morning of Jan. 15th, manager Copeland "pulled" plaintiff Ridenour's whole route
6  that was pre-assigned the night before and contacted to report to the Reno yard.
7  Ridenour complied.

8

9  Manager Copeland brought 3 fraudulent accusations against Ridenour.
10 The first, that plaintiff had numerous tardies.
11 Mgr. Copeland violated the Union contract w/ the company as she had singled-out plaintiff for
12 disciplinary action where she did not also enforce the same for the rest of her team. (Later grieved
13 as retaliation by Plaintiff.)

14

15 Second, Copeland presented false statements about Ridenour and late lunches.
16 Note: Company policy allows technicians to go home for lunch as long as they contact their
17 managers for their approval, or in the event they cannot get them on the phone, to send a text
18 informing their manager that they are taking lunch at home.
19 Ridenour always attempted to contact his manager by phone, and sent text communication when
20 unable to reach manager on phone.
21 Copeland's accusations about late lunches are false.

22

23 Lastly, the second suspension that was assessed 5 days, manager Copeland accused plaintiff
24 Ridenour of a customer mistreat, failure to perform his duties as a prem tech, and a COBC (Code of
25 Business) violation, leaving a customer out of service, which happened to be the very repair ticket
26 from December 14th, 2017 that manager Copeland had texted and then called Ridenour on while
27 off-duty.

28

1  To help clarify this for the Court how this can be construed as fraud, please allow this explanation.

2  The duties of a prem tech once they dispatch either an install or a repair ticket are as follows:

3  We are to pre-call the customer to let them know we have dispatched their job and give them an eta

4  of our arrival.

5  When we arrive on-site we are to identify ourselves w/ our badge and greet the customer.

6  We then do the site survey to see either where the CPE/equipment will be installed, or are shown

7  where the trouble is on a repair.

8  If we need to leave the premises to go work on outside plant, we inform our customer, keeping them

9  updated throughout.

10  Upon completion of an install we thank the customer and leave our contact information.

11  The same goes for a successful repair ticket.

12  However, if we as a prem tech are unable to fix their services on a repair and need to put in a helper

13  ticket for I&R to come out, we explain this to the customer and inform them of when we will be

14  out, and also still leave contact numbers and information.

15  It is important to mention, that we technicians are not allowed to create helper tickets without

16  manager approval. That IS PART OF OUR DUTIES as a prem tech.

17

18  Manager Copeland accused plaintiff Ridenour of a customer mistreat.

19  Additionally, she accused plaintiff of failure to perform his duties. Not true.

20  Plaintiff Ridenour received manager approval to create the helper ticket.

21  Manager Copeland turned around and made it sound like Ridenour didn't follow protocols or work

22  according to the rules.

23  Manager Copeland fraudulently suspended plaintiff Ridenour on manufactured causes.

24

25  On the morning of Jan. 29th, 2018 @ 11am, Ridenour was ordered to appear in the conference room

26  where managers Eddy Copeland and Greg DeFehr were waiting.

27

28

Ridenour was welcomed back to duty from both of the previous two suspensions, but told to sit tight, not go anywhere, where they excused themselves from the room to retreat back to the manager's office where they informed plaintiff they had to make a follow-up phone call to HR and consult with their managers.

Upon returning to the conference room, managers Copeland and DeFehr then proceeded to open a new investigatory on plaintiff Ridenour, ultimately issuing a 10-day suspension this time.

During said meeting on the new suspension, manager Copeland began to bring up details of an old "false" customer complaint that had been settled, closed, and where plaintiff Ridenour had been found to be 100% "not at fault" by 2 separate Asset Protection agents out of West Sacramento.

After that meeting she then knowingly and intentionally invited union steward Jose Ruiz back to the manager's office where they showed him plaintiff's personnel file with the sole intention of manipulating him by revealing the false claim listed in the complaint of a derogatory racial slur, knowing that steward Ruiz would take it in the exact way he did.

After said meeting on Jan. 29th, plaintiff Ridenour and union steward Jose Ruiz discussed the new suspension meeting and Ruiz shared with Ridenour the information managers Copeland and DeFehr had shown him.

It is claimed by plaintiff that those actions were intentionally meant to harm Ridenour and influence steward Ruiz to not want to properly help Ridenour. That Copeland was relying on her personal friendship with steward Jose Ruiz and his wife, who Ruiz admitted to Ridenour was personal friends with "Eddy." Ms. Copeland.

## V.    CONCLUSIONS

Title VII makes it unlawful for an employer to discriminate against any employee bc, he has made a charge, testified, assisted, or "participated in any manner" in any investigation, proceeding, or hearing. 42 U.S.C. ss2000e 3(a).

Plaintiff Ridenour participated in a protected activity of the grievance process and additionally working through his union to investigate a claim of sexual harassment and was in turn retaliated against in direct violation of NRS 613.340.

Plaintiff feels that sufficient factual material has been provided; and if accepted as true, that on it's face is enough to state a claim to relief.

Plaintiff feels that the facts plead show a violation isn't just plausible, but probable.

## VI. DAMAGES

Back pay of $55,085.

Front pay of $40,000.

Loss of retirement, loss of peak earning years for Soc. Sec. estimations and calculated interest, loss of benefits, tbd in Discovery.

Union buy-out at retirement, $40k.

Emotional distress and loss of enjoyment of life, $500k.

Punitive damages, $750k.

Exemplary damages, $500k.

Re-Instatement.

DATED: September 6, 2022

_____
Steven Ridenour
In Pro Per