UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN RIDENOUR,<br><br>        Plaintiff,<br>    v.<br><br>NEVADA BELL TELEPHONE CO.,<br>d/b/a AT&T NEVADA,<br><br>        Defendant. | Case No. 3:22-cv-00004-MMD-CSD<br><br>ORDER |

**I.    SUMMARY**

*Pro se* Plaintiff Steven Ridenour brings this action against Defendant Nevada Bell Telephone Company ("AT&T")[1] for alleged sexual harassment by his former AT&T supervisor, Eddy Copeland, and the subsequent retaliation he endured when he rejected her advances and reported Copeland to his union. (ECF No. 39.) The Court granted AT&T's first motion to dismiss (ECF No. 24) and only gave Ridenour leave to amend his fraud and retaliation claims. (ECF No. 38 ("First Order").) Before the Court is AT&T's motion to dismiss ("Motion") Ridenour's first amended complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(6) for failure to state a claim, and 9(b) for failure to plead fraud with particularity.[2] (ECF No. 46.) For the reasons stated below, the Court will deny in part and grant in part AT&T's Motion.

///

///

---

[1] AT&T is the sole remaining Defendant in this case after the Court dismissed Defendant Communications Workers of American Union Local 9413 in the First Order. (ECF No. 38 at 14.)

[2] Ridenour responded and AT&T replied. (ECF Nos. 48, 50.)

## II. BACKGROUND[3]

Ridenour was a technician at AT&T and was represented by his union. (ECF No. 39 at 4, 6.) In November and December 2017, Ridenour alleges that his direct manager, Eddy Copeland, violated AT&T's sexual harassment policies by sending him inappropriate text messages. (ECF Nos. 39 at 3, 46-1 at 2.) Ridenour reported the alleged sexual harassment to his union in January 2018. (ECF No. 39 at 3.)

Ridenour alleges that Copeland and her successors, Greg DeFehr and Steve France, began to retaliate against him in February 2018. (*Id*. at 3-4) Ridenour claims that he suffered the following retaliatory actions: Copeland extending his suspension after she learned that Ridenour filed a grievance with his union against her (retaliation 1); DeFehr changing the passwords on Ridenour's devices without informing Ridenour (retaliation 2); DeFehr investigating Ridenour for being "out of route" when he was given permission to work from home (retaliation 3); and DeFehr and France firing Ridenour for being "out of route" (retaliation 4). (*Id*. at 4-5.)

Ridenour also alleges the following fraud[4] by his managers: DeFehr directing him to complete online trainings from home on February 26, 2018, but failing to inform Ridenour that he changed the passwords to access his devices (fraud 1)[5]; DeFehr investigating Ridenour for being "out of route" on February 26, 2018, despite ordering Ridenour not to dispatch any tickets that day and to work from home (fraud 2); DeFehr and France terminating Ridenour on March 22, 2018, for being "out of route" on February 26, 2018 (fraud 3); Copeland approving Ridenour's request to create a helper ticket but later denying her activity (fraud 4); Copeland lecturing Ridenour about

---

[3]The following allegations are adapted from the FAC (ECF No. 39), but the Court also considers certain clarifying details from the response and exhibits (ECF Nos. 46-1, 46-2, 48, 48-1) due to Ridenour's *pro se* status.

[4]The Court notes that Ridenour combines some of his retaliation and fraud claims together in the FAC. (ECF No. 39 at 3 (titled "Retaliation #2/Fraud #1," "Retaliation #3/Fraud #2," "Retaliation #4/Fraud #3").)

[5]The Court summarizes Ridenour's allegations in the order they are titled and organized in the FAC. (ECF No. 39 at 4-7.)

2

efficiency despite the lack of tension between them before the text messages (fraud 5); Copeland meeting Ridenour at his job site unannounced, hoping to catch him tardy (fraud 6); and Copeland "pulling" Ridenour's pre-assigned route and falsely accusing Ridenour of being tardy and taking late lunches, singling him out for disciplinary action, accusing him of customer mistreatment, and bringing up a past customer complaint of Ridenour using a racial slur (fraud 7). (*Id*. at 4-9.)

Ridenour subsequently filed a Charge of Discrimination with the Nevada Equal Rights Commission ("NERC") on January 10, 2019, for retaliation and sex discrimination. (ECF Nos. 46-1 at 2-3, 48 at 2.) The NERC issued its right-to-sue notice on July 9, 2021. (ECF Nos. 46 at 7, 46-2 at 2-3.) Ridenour's complaint was also relayed to the U.S. Equal Employment Opportunity Commission ("EEOC"), which adopted the findings of the NERC and issued its right-to-sue letter on August 18, 2021. (ECF Nos. 46-1 at 3, 48 at 3-4, 48-1 at 1.) Ridenour filed his lawsuit in Nevada state court on November 18, 2021 (ECF No. 1-2 at 2), and AT&T removed the case (ECF No. 1).

### III.   DISCUSSION

The Court will first deny the Motion as to Ridenour's retaliation claim because he has exhausted his administrative remedies, his claim is timely, and his claim is facially plausible. The Court will then grant the Motion as to most of Ridenour's fraud claims because they do not meet Rule 9's heightened pleading standard and the elements for fraud under Nevada law. However, the Court will allow one plausible fraud claim to proceed, as explained below.

#### A.   Exhaustion of Administrative Remedies for Retaliation Claim

To start, AT&T argues that Ridenour's retaliation claim must be dismissed for failure to exhaust administrative remedies because (1) Ridenour failed to include "any reference" in the FAC that he filed a charge for retaliation with the NERC or EEOC and received a right to sue letter—a condition precedent for this lawsuit, and (2) Ridenour never alleged in his NERC Charge that he engaged in protected activity that "could give rise to a potential retaliation claim" and his allegations in the FAC are "completely

different" from his allegations in the Charge. (ECF No. 46 at 5-7.) Ridenour counters that he did indeed file a retaliation claim with the NERC and EEOC, checked the retaliation box in his NERC Charge, and his FAC allegations are reasonably related to the allegations in his Charge.[6] (ECF No. 48 at 2-3, 7.) The Court finds that Ridenour has exhausted his administrative remedies.

A plaintiff must first exhaust his administrative remedies before seeking adjudication of his Title VII claim in federal court. *See Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002). Exhaustion requires that the complainant file a timely charge with the NERC or EEOC,[7] thereby allowing the agency time to investigate the charge. *See Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003). In assessing whether a claim was brought before the EEOC or NERC, the federal court may consider claims that are "like or reasonably related to the allegations" in the charge and charges that are "within the scope of an [agency] investigation that could be reasonably expected to grow out of the allegations." *Green v. L.A. Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quotation marks and citation omitted); *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). A plaintiff's claims are reasonably related to allegations in the charge "to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). The court construes the charges "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id*. (quotation marks and citation omitted).

---

[6]The Court notes that Ridenour's arguments and allegations are, at times, difficult to follow and require the Court to construe them as stated herein.

[7]"If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. [He] may file [his] charge with one agency, and that agency will then relay the charge to the other." *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019) (citations omitted). Such an agreement appears to exist between the EEOC and NERC since Ridenour's NERC Charge was relayed to the EEOC for review and the EEOC subsequently adopted the findings of the NERC and issued Ridenour a right to sue letter. (ECF Nos. 48 at 3-4, 48-1 at 1.)

The Court rejects AT&T's first argument because it is undisputed that Ridenour filed a NERC Charge and received a right to sue notice. Although Ridenour failed to allege that he filed the agency complaint in his FAC, AT&T's own briefs and exhibits confirm that Ridenour did indeed file the Charge. (ECF Nos. 46, 46-1, 46-2.) In an attempt to advance its timeliness argument, AT&T admits in its Motion that Ridenour submitted a NERC Charge (dated January 10, 2019) and received a NERC right to sue notice on July 8, 2021. (ECF Nos. 46 at 7, 46-1 at 2-3.) In fact, AT&T provides the Court with copies of Ridenour's Charge and the NERC notice, even asking the Court to review these attachments and incorporate them by reference. (ECF Nos. 46 at 8, 46-1, 46-2.) Ridenour also confirmed in his response that he filed discrimination and retaliation claims with the NERC and EEOC. (ECF No. 48 at 2-4.) Given Ridenour's *pro se* status and AT&T's own representations, the Court rejects AT&T first argument and finds that it is undisputed that Ridenour filed a NERC Charge and received a NERC right-to-sue letter prior to this lawsuit. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (explaining that "*pro se* pleadings are liberally construed") (citations omitted).

The Court also rejects AT&T's second argument because the allegations in Ridenour's FAC are "like or reasonably related" to the allegations in his Charge and could be expected to grow out of the Charge allegations. *See Green*, 883 F.2d at 1475-76; *Leong*, 347 F.3d at 1122. In the FAC, Ridenour alleges that his manager, Copeland, violated company policies for sexual harassment by sending him inappropriate text messages. (ECF No. 39 at 3.) Copeland and her successors then began retaliating against Ridenour for rejecting Copeland's advances and filing grievances with his union, including suspending Ridenour, extending his suspensions, changing his passwords without permission, falsely accusing Ridenour of being "out of route," and terminating him for being "out of route." (*Id*. at 4-5.) In his NERC Charge, Ridenour checked the box for "retaliation," and similarly alleges that Copeland sent him inappropriate text messages to go out for drinks, which he ignored. (ECF No. 46-1 at 2.) Copeland's attitude allegedly began to shift after his rejection, and she started to scrutinize his work,

1  suspend him for fabricated reasons, and initiate fraudulent claims against him. (*Id*. at 3.)
2  Ridenour alleges that he was eventually terminated for being "out of route." (*Id*.)

3  Construing Ridenour's Charge with the utmost liberality, the Court finds that the
4  allegations in Ridenour's FAC fall well within the scope of the NERC Charge and
5  investigation, and are not "completely different" from the Charge allegations like AT&T
6  represents. (ECF No. 46 at 5-7.) *See B.K.B.*, 276 F.3d at 1100; *Rodriguez v. Airborne
7  Express*, 265 F.3d 890, 897 (9th Cir. 2001) ("The scope of the written administrative
8  charge defines the permissible scope of the subsequent civil action") (citations omitted).
9  The claims in the FAC are consistent with Ridenour's "original theory" that he was
10 sexually harassed by Copeland and retaliated against after he rejected her advances.
11 (ECF Nos. 39, 46-1.) Ridenour listed specific examples of retaliatory actions by
12 Copeland and her successors in his Charge, including his termination for being "out of
13 route." (ECF No. 46-1 at 3.) Elaborating on these charges, Ridenour alleged in his FAC
14 that his new manager, Greg DeFehr, continued Copeland's retaliation by accusing
15 Ridenour of being "out of route" on February 26, 2018, even though he specifically
16 ordered Ridenour not to dispatch any tickets that day and to work from home; DeFehr
17 and France then fired him. (ECF No. 39 at 5.)

18 To the extent there were allegations in FAC that were not raised in the Charge—
19 including Ridenour filing a grievance with his union and a few other instances of
20 retaliation by Copeland's successors—those acts would have been revealed in a
21 reasonable NERC investigation since they all stem from and relate to Copeland's sexual
22 harassment and Ridenour's rejection. (*Id*. at 4-5.) *See Leong*, 347 F.3d at 1122;
23 *Vasquez*, 349 F.3d at 645 (for administrative exhaustion, the court must consider
24 whether a reasonable investigation by the agency would have encompassed the
25 allegedly retaliatory acts). Accordingly, the Court denies AT&T's Motion for failure to
26 exhaust administrative remedies.

27 ///
28 ///

### B. Timeliness of Retaliation Claim

Next, AT&T contends that Ridenour's retaliation claim is time-barred because (1) Ridenour is only bringing a state law claim, and (2) he waited more than 90 days after he received his NERC right to sue letter to file this lawsuit. (ECF Nos. 46 at 7-8, 50 at 4-5.) Ridenour counters that his lawsuit is timely because he filed the lawsuit within 90 days of when he received the EEOC right to sue letter. (ECF No. 48 at 4.) The Court agrees with Ridenour.

First, the Court rejects AT&T's argument that Ridenour is only bringing a state law retaliation claim and the 90-day clock began when he received his NERC right to sue letter on July 9, 2021. (ECF No. 46 at 7-8.) Construing the FAC liberally, the Court finds that Ridenour is bringing both a state and a federal retaliation claim. (ECF No. 39.) *See Balistreri*, 901 F.2d at 699. As support, Ridenour cites to both Title VII and Nevada law in his FAC. (*Id*. at 2, 9.) In fact, Ridenour quotes the direct language from the federal anti-retaliation statute at the end of his pleading. (*Id*. at 9 (quoting 42 U.S.C. § 2000e-3(a)).) Given that Ridenour is proceeding *pro se* and the federal and Nevada statutes are almost identical, the Court will construe Ridenour as bringing both a Title VII and Nevada retaliation claim against AT&T. *See Complete Care Med. Ctr. v. Beckstead*, 466 P.3d 538 (Nev. 2020) (explaining that "Nevada's anti-discrimination statute, NRS 613.330(1)(a), is almost identical to Title VII . . . and courts apply the same analysis") (quotation marks and citations omitted). Because the EEOC issued its right to sue letter on August 18, 2021,[8] and AT&T concedes that Ridenour filed his lawsuit approximately 88 days later (on November 18, 2021), the lawsuit was filed within the statute of limitations.[9] (ECF Nos. 48-1 at 1, 50 at 4.)

---

[8] *See supra* footnote 7.

[9] "A plaintiff must bring a Title VII employment discrimination action in federal court within ninety days after the giving of the EEOC's right-to-sue notice." *Lee v. Venetian Casino Resort, LLC,* 747 F. App'x 607, 608 (9th Cir. 2019) (quotation marks and citation omitted). "The start of the limitations period is measured from the date on which a right-to-sue notice letter arrived at the claimant's address of record." *Id*. (citing *Payan v. Aramark Mgmt. Servs. Ltd. P'ship,* 495 F.3d 1119, 1122 (9th Cir. 2007))

However, even if Ridenour was only bringing a Nevada retaliation claim against AT&T, it would *still* be timely. NRS § 613.430(1)(b)(2) clearly provides that a plaintiff can file their lawsuit within 90 days after they receive their right to sue letter from the NERC *or* EEOC, *whichever is later*. Here, Ridenour received his EEOC right to sue letter *after* he received the NERC notice, so the limitations period would begin on that later date. (ECF Nos. 46-2, 48-1.) Moreover, NRS § 613.430(2) provides that the NERC limitations period is *tolled* "during the pendency of the complaint" before the EEOC. Thus, the limitations period would not begin until Ridenour's claim before the EEOC was resolved. Accordingly, the Court rejects AT&T's argument that Ridenour's retaliation claim is untimely.

### C. Plausibility of Retaliation Claim

AT&T also argues that Ridenour's retaliation claim is not facially plausible because Ridenour fails to "allege the retaliation causal factor, or that 'but-for' him engaging in protected activity his employment would not have been terminated." (ECF No. 46 at 8.) Ridenour counters that he included sufficient factual allegations for the Court to infer causation.[10] (ECF No. 48 at 10.) The Court agrees with Ridenour.

The causal link for retaliation "can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (citation omitted). Here, Ridenour alleges that he engaged in

---

(quotation marks omitted). Although it is unclear when Ridenour actually received his right-to-sue letter, the Court applies "a rebuttable presumption that an EEOC letter is received three days after its date of issuance," so the statute of limitations began to run on August 21, 2021. *Id*.

[10]To show retaliation, Ridenour must allege that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

protected activities[11] on January 29, 2018, when he submitted two grievances to his union regarding Copeland's alleged sexual harassment; he also discussed the sexual harassment with a union employee on January 30, 2018. (ECF No. 39 at 3.) AT&T knew about these grievances since Copeland was subsequently notified that Ridenour was working with his union to inquire about her violations of company policies and the union steward was invited to and present at disciplinary meetings with Ridenour's managers. (*Id*. at 4, 9.) *See id*.; *see also Raad v. Fairbanks N. Star Borough Sch. Dist*., 323 F.3d 1185, 1197 (9th Cir. 2003) (explaining that "the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity").

Moreover, the protected activity and adverse action were close in time since the retaliatory acts by Ridenour's managers began on February 12, 2018—shortly after Ridenour complained to his union. (*Id*. at 4.) *See Dawson*, 630 F.3d at 936 (citation omitted). Accordingly, the Court rejects AT&T's argument because the Court can infer causation from the circumstantial evidence in this case. *See id*.

### D. Plausibility of Fraud Claims (1 to 7)

Finally, AT&T contends that the Court must dismiss Ridenour's fraud claims because they fail to meet the heightened standard under Rule 9(b) and the elements of fraud under Nevada law. (ECF No. 46 at 9.) Ridenour counters that he did plead each fraud claim with "specifics and particularities." (ECF No. 48 at 2.) Even construed liberally, the Court finds that Ridenour has only alleged one plausible fraud claim (combined claims 1-3) and will dismiss his other fraud claims (claims 4-7).

First and foremost, the Court notes that Ridenour improperly separates a single fraud claim into multiple, separate claims and also combines different fraud claims

---

[11]"An employee engages in protected activity when [he] opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law[,]" including making a charge, filing a grievance, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *See Fried v. Wynn Las Vegas*, Case No. 20-15710, 2021 WL 5408678, at *2 (9th Cir. Nov. 18, 2021) (citation omitted); 42 U.S.C. § 2000e-3(a).

together. (ECF No. 39 at 4-9.) In his first three fraud claims, Ridenour alleges that at 3:30p.m. on February 26, 2018, DeFehr directed him to complete three online trainings at home and ordered him not to dispatch any jobs or tickets that day. (*Id*. at 4.) Relying on DeFehr's instructions, Ridenour proceeded to work from home on the 26th. (*Id*. at 4-5.) However, at 11:00a.m. on March 1, 2018, DeFehr accused Ridenour of being "out of route" on the 26th and opened a new investigation against him. (*Id*. at 5.) DeFehr and France eventually terminated Ridenour at the beginning of his shift on March 22, 2018, because he was "out of route" on February 26. (*Id*.) The Court finds that Ridenour's allegations meet Rule 9's heightened standards,[12] because he specifies the time, place, content of the false representations, and the identities of the parties. (*Id*. at 4-5.) *See Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted); *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019).

Ridenour also alleged the elements of fraud under Nevada law,[13] since DeFehr made a knowingly false statement to Ridenour that he could work from home on February 26, 2018, when Ridenour could not; DeFehr intended Ridenour to rely on his representations by specifically instructing Ridenour not to dispatch any tickets or jobs that day; and Ridenour justifiably relied on DeFehr's statements and completed his trainings at home. (*Id*. at 4-5.) *See Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021) (citation omitted). However, DeFehr later disciplined Ridenour for being "out of route" on this training day and eventually terminated him, causing Ridenour to suffer damages from loss of income, retirement, and benefits. (*Id*.

---

[12]Rule 9(b) provides that when a party alleges fraud, the party must "state with particularity the circumstances constituting fraud," including the "the who, what, when, where, and how of the misconduct charged." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted).

[13]To prevail on a Nevada fraud claim, the plaintiff must allege: "(1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiffs justifiable reliance, and (5) damages." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021) (citation omitted).

1  at 5, 10.) *See id*. Although Ridenour is allowed to proceed on this fraud claim,[14] the Court will limit the scope of the claim. Within this claim, Ridenour also asserts a separate fraud allegation that DeFehr changed his passwords without telling him. (*Id*. at 4-5.) However, it is unclear from the allegation whether DeFehr knowingly omitted this information or if he simply forgot to tell Ridenour. (*Id*. at 5.) *See id*. Moreover, Ridenour did not suffer any damages from the password change itself, as required under Nevada law, since he was eventually able to reset his passwords and complete his trainings. (*Id*.) *See id*. In other words, Ridenour was not disciplined for failure to complete his trainings, he was terminated for being "out of route." (*Id*.) *See id*. Accordingly, Ridenour's fraud claim is restricted to DeFehr's false representation that Ridenour could work from home and not dispatch any tickets on February 26, 2018.

The Court finds that Ridenour's remaining fraud claims (4-7) do not meet either Rule 9 standards, the elements for fraud under Nevada law, or both. In fraud claim 4, Ridenour alleges that Copeland approved his request to create a helper ticket on December 14, 2017, but would later deny that she did. (*Id*. at 6.) However, it is unclear how Ridenour was damaged by Copeland's denial. (*Id*.) *See id*. Ridenour also alleges that Copeland lectured him about efficiency on January 4, 2018 (fraud 5) and met him unannounced at a job site on January 8, 2018, hoping to catch him tardy (fraud 6). (*Id*. at 6-7.) But it is unclear whether Copeland made any false representations, how Copeland intended to induce Ridenour's reliance, and how Ridenour was damaged by Copeland's actions since Copeland did not actually catch him tardy and he was not suspended or disciplined. (*Id*.) *See Becerra*, 945 F.3d at 1228 (citation omitted); *Nev. State Educ. Ass'n*, 482 P.3d at 675 (citation omitted). Lastly, in fraud claim 7, Ridenour makes a series of short, fragmented allegations of misconduct, including Copeland pulling his route, accusing him of being tardy and having late lunches, and accusing him of customer misconduct. (*Id*. at 7-9.) However, these vague, conclusory allegations do

---

[14]The Court will construe Ridenour's first three fraud claims as a single claim since they all pertain to DeFehr's false representations regarding Ridenour's work-from-home trainings on February 26, 2018.

11

not meet Rule 9's heightened particularity requirements or the elements for fraud under Nevada law. (*Id*.) *See id*. Accordingly, the Court grants AT&T's Motion in part and dismisses fraud claims 4 to 7. Only one fraud claim (formerly claims 1-3) may proceed, with the restrictions discussed above.

### III.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant Nevada Bell Telephone Company's motion to dismiss (ECF No. 46) the amended complaint (ECF No. 39) is granted in part and denied in part. Ridenour may only proceed with his federal and state law retaliation claims and one fraud claim, as detailed herein.

DATED THIS 30th Day of June 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE