Elizabeth Fletcher
Nevada Bar No. 10082
Fletcher & Lee
448 Ridge Street
Reno, Nevada 89501
Telephone: (775) 324-1011
Email: efletcher@fletcherlawgroup.com

Stacey Campbell
Colorado Bar No. 38378
(admitted p*ro hac vice*)
Campbell Litigation, P.C.
1410 N. High Street
Denver, Colorado 80218
Telephone: (303) 536-1833
Email: stacey@campbell-litigation.com

**Attorneys for Defendant Nevada Bell Telephone Company**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| STEVEN RIDENOUR,<br><br>    Plaintiff,<br><br>v.<br><br>NEVADA BELL TELEPHONE CO. DBA AT&T NEVADA,<br><br>    Defendants. | Case No.: 3:22-cv-00004-MMD-CSD<br><br>**ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND** |

Defendant Nevada Bell Telephone Company ("Defendant" or "Nevada Bell" or the "Company"), by and through its undersigned counsel, respectfully submits its Answer and Affirmative Defenses to Plaintiff Steven Ridenour's (hereinafter the "Plaintiff") Amended Complaint pursuant to and consistent with the Court's June 30, 2023 Order (ECF 53) granting in part and denying in part Defendant's motion to dismiss Plaintiff's Amended Complaint.

1

## I.  PARTIES

1. Plaintiff, STEVEN RIDENOUR, (hereinafter "Plaintiff") is an individual who is currently, and was at all relevant times herein, a resident of the State of Nevada, County of Washoe, City of Sparks.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations set forth in Paragraph 1 of the Amended Complaint, and therefore denies the same.

2. Defendant, NEVADA BELL TELEPHONE CO, DBA AT&T NEVADA, is a corporation organized and existing by virtue of the laws of the State of Nevada, and may be served process by service upon its registered agent, C T Corporation System, 701 S. Carson St., Suite 200, Carson City, Nevada 89701.

**ANSWER:** Defendant admits the allegations set forth in Paragraph 2 of the Amended Complaint.

3. All of the acts and/or failures to act alleged herein were duly performed by and/or are attributable to defendants, individually or acting by and through their agents and employees. Said acts and/or failures to act were within the scope of any agency or employment or were ratified by defendants.

**ANSWER:** Defendant denies the allegations set forth in Paragraph 3 of the Amended Complaint.

4. The names and capacities, whether individual, corporate, associate or otherwise, of defendants and/or their alter egos sued herein as Nevada Bell Telephone Co, DBA AT&T Nevada, are presently unknown, and Plaintiff will amend this complaint to insert the name(s) when ascertained.

**ANSWER:** Defendant denies that Plaintiff is entitled to amend his complaint further in his matter. Defendant denies the remaining allegations set forth in Paragraph 4 of the Amended Complaint.

## II. JURISDICTION AND VENUE

5. Plaintiff seeks damages which, exclusive of attorney fees and costs, exceed $15,000.

**ANSWER:** Defendant denies that Plaintiff is entitled to damages of any kind based on the allegations set forth in the Amended Complaint. Defendant denies the remaining allegations set forth in Paragraph 5 of the Amended Complaint.

6. Defendant is either a Nevada company doing business in Washoe County, Nevada or foreign company with offices and/or doing business regularly in Washoe County, Nevada.

**ANSWER:** Defendant admits that it is a Delaware corporation which is licensed to do business in the State of Nevada. Defendant denies the remaining allegations set forth in Paragraph 6 of the Amended Complaint.

7. This Court has subject matter jurisdiction over this action and specific personal jurisdiction over the parties.

**ANSWER:** The allegations set forth in Paragraph 7 of the Amended Complaint call for legal conclusions to which no response is required. Defendant otherwise denies that the Court has subject matter jurisdiction over Plaintiff's federal or state-law retaliation claims for the reasons set forth in its October 4, 2022 Motion to Dismiss (ECF 46).

8. Venue is proper in the Court pursuant to NRS 13.040.

**ANSWER:** Defendant admits that venue is proper in this Court. Defendant denies the remaining allegations set forth in Paragraph 8 of the Amended Complaint.

## III. STATEMENT OF CLAIM

9. Plaintiff wishes to assert a claim for Retaliation under NRS. 613.340, which states that it is "an unlawful employment practice for an employer to discriminate against any of his or her employees bc the employee has opposed any practice made an unlawful

3

employment practice, or bc he or she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing."

**ANSWER:** Defendant denies the allegations set forth in Paragraph 9 of the Amended Complaint.

10. Plaintiff entered into a "protected activity" on January 29th, 2018 when plaintiff submitted two separate grievances (to union steward, Thomas Golding) pertaining to the two separate cases brought against him on January 15th.

**ANSWER:** Defendant denies the allegations set forth in Paragraph 10 of the Amended Complaint.

11. Plaintiff was protected under NRS 613.340, on Jan. 30th, when he discussed sexual harassment claim with union employee, Petula Vierja, pertaining to manager Copeland's violation of the company policies on Personal Relationships & Sexual Harassment from text messages sent to plaintiff on Nov. 21st, 2017 at the end of his shift, approx. 7-8pm.

**ANSWER:** Defendant denies the allegations set forth in Paragraph 11 of the Amended Complaint.

12. Plaintiff claims Retaliation for 10 days suspension issued on February 12th by manager Copeland. [Retaliation #1]

**ANSWER:** Defendant denies the allegations set forth in Paragraph 12 of the Amended Complaint.

13. Plaintiff claims Retaliation and Fraud by manager Greg DeFehr on Feb. 26th @ 3:30pm, 2018. [Retaliation #2/Fraud #1]

**ANSWER:** Defendant denies the allegations set forth in Paragraph 13 of the Amended Complaint.

14. Plaintiff claims Retaliation and Fraud by manager Greg DeFehr on March 1st. [Retaliation #3/Fraud #2]

**ANSWER:** Defendant denies the allegations set forth in Paragraph 14 of the Amended Complaint.

15. Plaintiff claims Retaliation and Fraud on Defendant and managers Greg DeFehr and manager Steve France for adverse employment act of being terminated on March 22nd, 2018. [Retaliation #4/Fraud #3]

**ANSWER:** Defendant denies the allegations set forth in Paragraph 15 of the Amended Complaint.

16. Plaintiff claims Fraud by manager Copeland on the evening of December 14th, 2017. [Fraud #4]

**ANSWER:** This Claim was dismissed by the Court on June 30, 2023 [ECF 53] and, therefore, no response is required. Defendant otherwise denies the allegations set forth in Paragraph 16 of the Amended Complaint.

17. Plaintiff claims Fraud by manager Copeland on the morning of Jan. 4th, 2018. [Fraud #5]

**ANSWER:** This Claim was dismissed by the Court on June 30, 2023 [ECF 53] and, therefore, no response is required. Defendant otherwise denies the allegations set forth in Paragraph 17 of the Amended Complaint.

18. Plaintiff claims Fraud by manager Copeland on the morning of Jan. 8th, 2018. [Fraud #6]

**ANSWER:** This Claim was dismissed by the Court on June 30, 2023 [ECF 53] and, therefore, no response is required. Defendant otherwise denies the allegations set forth in Paragraph 18 of the Amended Complaint.

19. Plaintiff claims Fraud by manager Copeland on the morning of Jan. 15th, 2018. [Fraud #7]

**ANSWER:** This Claim was dismissed by the Court on June 30, 2023 [ECF 53] and, therefore, no response is required. Defendant otherwise denies the allegations set forth in Paragraph 19 of the Amended Complaint.

20. Plaintiff claims Fraud and Retaliation by manager Copeland and manager Greg DeFehr on the morning of Jan. 29th. [Retaliation #5/Fraud #8]

**ANSWER:** Plaintiff's "Fraud #8" claim was dismissed by the Court on June 30, 2023 [ECF 53] and, therefore, no response is required. Defendant otherwise denies the remaining allegations set forth in Paragraph 20 of the Amended Complaint.

### IV.   EXPLANATION OF CLAIMS

Note: All Retaliation claims begin on and after Jan. 29th, 2018, when Plaintiff began his protected activity status per NRS 613.340, and all Fraud claims began Jan. 15th, 2018.[1]

**ANSWER:** Defendant denies the allegations set forth in Page 4:1-2 of the Amended Complaint.

**Retaliation #1**, on Feb. 12th, 2018, plaintiff was at home on suspension and reported to the Reno yard 11am where manager Copeland added an additional 10 days of suspension where she stated "they need more time to investigate."

Manager Copeland had been made aware of the fact that Plaintiff was working through his union representatives to inquire about her violations of the company's policies and was retaliating as a result.

**ANSWER:** Defendant denies the allegations set forth in Page 4:4-9 of the Amended Complaint.

**Retaliation #2/Fraud #1** by manager Greg DeFehr on Feb. 26th 2018 @ 3:30pm.

On Feb. 26th, 2018, plaintiff Ridenour was returned to duty from 30 days suspension by manager Copeland and manager Greg DeFehr.

---

[1] Beginning after Paragraph 20 of the Amended Complaint, Plaintiff stops identifying his factual and legal allegations by paragraph. For allegations made after Paragraph 20 of the Amended Complaint, Defendant refers to and answers the same by page and line number.

1     **ANSWER:** Defendant admits that Plaintiff returned to work from suspension on or about February 26, 2018. Defendant denies the remaining allegations set forth in Page 4:11-13 of the Amended Complaint.

In the same meeting manager Copeland excused herself and manager Steve France took over as plaintiff Ridenour's new manager.

**ANSWER:** Defendant admits that at the time Plaintiff returned from suspension on or about February 26, 2018, Plaintiff reported to Mr. Steven France. Defendant denies the remaining allegations set forth in Page 4:14-15 of the Amended Complaint.

As plaintiff Ridenour had just been returned to duty, manager Greg DeFehr informed Ridenour that he was to read 3 paper pamphlets on company policies.

Mgr. DeFehr also stated that he had emailed the links to 3 online trainings to Ridenour, and that he would find the links in his work email.

**ANSWER:** Defendant admits that as part of his return to work after suspension on February 26, 2018, Defendant provided Plaintiff with written materials and emailed links to online trainings/coverages for Plaintiff to complete that day. Defendant denies the remaining allegations set forth in Page 4:16-19 of the Amended Complaint.

Manager DeFehr did not inform Ridenour that he had changed Ridenour's passwords on his devices.

**ANSWER:** Per the Court's June 30, 2023 Order, the Court restricted Plaintiff's fraud claim to the alleged false representation made by Mr. DeFehr that Plaintiff could work from home and not dispatch any tickets on February 26, 2018 and, therefore, no response is required to the allegations set forth in Page 4:20-21 of the Amended Complaint. Defendant otherwise denies the allegations set forth in Page 4:20-21 of the Amended Complaint.

1  Manager DeFehr informed plaintiff Ridenour that he was not to dispatch any jobs that
2  day, the 26th/Feb.
3  **ANSWER:** Defendant denies the allegations set forth in Page 4:22-23 of the
4  Amended Complaint.

6  Plaintiff Ridenour was re-issued his badge/access door & gate cards, along with his
7  work cell phone and work iPad.
8  **ANSWER:** Defendant is without sufficient information to admit or deny the
9  allegations set forth in Page 4:24-25 of the Amended Complaint, and therefore denies the
10 same.

12 Manager DeFehr approved plaintiff Ridenour to complete the online trainings from
13 home. Manager DeFehr instructed Ridenour that when he completed the 3 online trainings
14 that he was to forward the screenshots or verifications to manager Steve France, who Ridenour
15 had now been re-assigned to.
16 **ANSWER:** Defendant denies the allegations set forth in Pages 4:26-5:2 of the
17 Amended Complaint.

19 When Ridenour arrived home after using his 15-minute break to drive there, he quickly
20 discovered that both of his passwords for his devices had been changed.
21 **ANSWER:** Per the Court's June 30, 2023 Order, the Court restricted Plaintiff's fraud
22 claim to the alleged false representation made by Mr. DeFehr that Plaintiff could work from
23 home and not dispatch any tickets on February 26, 2018 and, therefore, no response is required
24 to the allegations set forth in Page 5:3-4 of the Amended Complaint.  Defendant otherwise
25 denies the allegations set forth in Page 5:3-4 of the Amended Complaint.

    Plaintiff Ridenour then spent the next hour and 15 minutes on the phone w/ TSC (tech services center) receiving assistance in resetting both passwords.

    Ridenour, during the course of the phone call, was informed that both passwords had been changed the previous day.

    **ANSWER:** Per the Court's June 30, 2023 Order, the Court restricted Plaintiff's fraud claim to the alleged false representation made by Mr. DeFehr that Plaintiff could work from home and not dispatch any tickets on February 26, 2018 and, therefore, no response is required to the allegations set forth in Page 5:5-8 of the Amended Complaint.  Defendant is otherwise without sufficient information to admit or deny the allegations set forth in Page 5:5-8 of the Amended Complaint, and therefore denies the same.

    Upon gaining access to his work email, Ridenour located the links to the online trainings, but also discovered 2 emails that had been sent to his work email, but addressed to Greg DeFehr. They were "auto-reply" messages "thanking" manager DeFehr for using the "automated password reset option."

    **ANSWER:** Per the Court's June 30, 2023 Order, the Court restricted Plaintiff's fraud claim to the alleged false representation made by Mr. DeFehr that Plaintiff could work from home and not dispatch any tickets on February 26, 2018 and, therefore, no response is required to the allegations set forth in Page 5:9-12 of the Amended Complaint.  Defendant is otherwise without sufficient information to admit or deny the allegations set forth in Page 5:9-12 of the Amended Complaint, and therefore denies the same.

    Mgr. DeFehr not sharing that Ridenour's passwords had been changed was a subtle retaliation, NRS. 613.340.

    **ANSWER:** To the extent the above allegation is made in furtherance of Plaintiff's fraud claim, per the Court's June 30, 2023 Order, the Court restricted Plaintiff's fraud claim to the alleged false representation made by Mr. DeFehr that Plaintiff could work from home

and not dispatch any tickets on February 26, 2018 and, therefore, no response is required to the allegations set forth in Page 5:13-14 of the Amended Complaint. Defendant otherwise denies the allegations set forth in Page 5:13-14 of the Amended Complaint.

**March 1st, 2018 @ beginning of shift @ 11am, Retaliation #3 & Fraud #2.**

Manager DeFehr accused plaintiff of being out of route and opened a new "investigatory" on Feb. 26th.

**ANSWER:** Defendant admits that Plaintiff was out of route on February 26, 2018 and that Defendant investigated Plaintiff's misconduct. Defendant denies the remaining allegations set forth in Page 5:16-18 of the Amended Complaint.

This constitutes fraud as plaintiff was specifically ordered to 'not' dispatch on any jobs/tickets, but to complete admin work on his work iPad and was given permission to take them home to be used for that purpose, to work from home.

**ANSWER:** Defendant denies the allegations set forth in Page 5:19-21 of the Amended Complaint.

**Retaliation #4/Fraud #3.** March 22nd, 2018 @ beginning of shift, managers Greg DeFehr & Steve France terminated plaintiff's employment.

**ANSWER:** Defendant admits that Plaintiff was terminated on or about March 21, 2018. Defendant denies the remaining allegations set forth in Page 5:23-24 of the Amended Complaint.

Plaintiff was given the reason of being out of route on Feb. 26th, 2018.

**ANSWER:** Defendant admits that Plaintiff was terminated, among other reasons, for going home without management approval on February 26, 2018. Defendant denies the remaining allegations set forth in Page 5:25 of the Amended Complaint.

1  Plaintiff was not out of route as plaintiff was given permission to work from home on
2  wireless devices.
3  **ANSWER:** Defendant denies the allegations set forth in Page 5:26-27 of the
4  Amended Complaint.

6  Fraud #4, December 14th, 2017, @ approx.. 7:30-8:15pm. Mgr. Copeland had first
7  texted, then called plaintiff on his work cell phone. Copeland was off the clock.
8  Plaintiff explained to her that he was on a repair job and had finished troubleshooting
9  and would be needing to find out who the Duty Manager was for the evening so he could
10 contact them and request an approval to create a helper ticket to have I&R come out in the
11 morning to recondition the 2nd line of a bonded pair, to get the customer back in service.
12 After discussing the semantics, manager Copeland instructed Ridenour to send over
13 the request for the helper ticket to her, upon which Ridenour questioned her. Bc 1) she was
14 off duty, and 2) he shared w/ her that the previous all-tech Friday morning meeting all
15 technicians had been instructed not to ask their managers to create "helpers" anymore, only
16 that they could approve them or not.
17 "Eddy," manager Copeland, informed plaintiff Ridenour that she had her iPad on her
18 person and that he should send the approval request, to which he did.
19 Manager Copeland approved the request to create the helper ticket.
20 When plaintiff Ridenour began to have issues w/ his work iPad (glitching and freezing
21 in between screens), mgr. Copeland offered to help create the helper ticket since she was
22 already logged-in to AT&T's internal OS, WFE (Work Force Engine), she said,
23 (paraphrasing) "hold on, let me try."
24 Manager Copeland would later deny same activity.
25 Fraud #5, Manager Copeland suddenly changed her tone and attitude toward
26 technician/plaintiff Ridenour beginning the morning of Jan. 4th and was lecturing him on his

efficiency and using a very course tone where previous there had been no existence of any tension between Manager Copeland and plainfiff.

She continued on the phone, and between texting and phone call duration, had used approximately 45 minutes of Ridenour's 8 hour work shift by keeping him tied-up w/ conversation while he sat at the crossbox on Pyramid across from the Scolari's, unable to perform his duties/wiring up the job, while lecturing him on his efficiency and making better use of his time.

Fraud #6, Manager attempted to then meet plaintiff Ridenour at his first job unannounced, hoping to catch him being tardy, to which she did not. That was the morning of Jan. the 8th, 2018.

Fraud #7, the morning of Jan. 15th, manager Copeland "pulled" plaintiff Ridenour's whole route that was pre-assigned the night before and contacted to report to the Reno yard.

Ridenour complied.

Manager Copeland brought 3 fraudulent accusations against Ridenour.

The first, that plaintiff had numerous tardies.

Mgr. Copeland violated the Union contract w/ the company as she had singled-out plaintiff for disciplinary action where she did not also enforce the same for the rest of her team. (Later grieved as retaliation by Plaintiff.)

Second, Copeland presented false statements about Ridenour and late lunches.

Note: Company policy allows technicians to go home for lunch as long as they contact their managers for their approval, or in the event they cannot get them on the phone, to send a text informing their manager that they are taking lunch at home.

Ridenour always attempted to contact his manager by phone, and sent text communication when unable to reach manager on phone.

Copeland's accusations about late lunches are false.

Lastly, the second suspension that was assessed 5 days, manager Copeland accused plaintiff Ridenour of a customer mistreat, failure to perform his duties as a prem tech, and a

1 COBC (Code of Business) violation, leaving a customer out of service, which happened to be
2 the very repair ticket from December 14th, 2017 that manager Copeland had texted and then
3 called Ridenour on while off-duty.

4     To help clarify this for the Court how this can be construed as fraud, please allow this
5 explanation.

6     The duties of a prem tech once they dispatch either an install or a repair ticket are as
7 follows:

8     We are to pre-call the customer to let them know we have dispatched their job and
9 give them an eta of our arrival.

10     When we arrive on-site we are to identify ourselves w/ our badge and greet the
11 customer.

12     We then do the site survey to see either where the CPE/equipment will be installed, or
13 are shown where the trouble is on a repair.

14     If we need to leave the premises to go work on outside plant, we inform our customer,
15 keeping them updated throughout.

16     Upon completion of an install we thank the customer and leave our contact
17 information.

18     The same goes for a successful repair ticket.

19     However, if we as a prem tech are unable to fix their services on a repair and need to
20 put in a helper ticket for I&R to come out, we explain this to the customer and inform them
21 of when we will be out, and also still leave contact numbers and information.

22     It is important to mention, that we technicians are not allowed to create helper tickets
23 without manager approval. That IS PART OF OUR DUTIES as a prem tech.

24     Manager Copeland accused plaintiff Ridenour of a customer mistreat.
25     Additionally, she accused plaintiff of failure to perform his duties. Not true.
26     Plaintiff Ridenour received manager approval to create the helper ticket.

Manager Copeland turned around and made it sound like Ridenour didn't follow protocols or work according to the rules.

Manager Copeland fraudulently suspended plaintiff Ridenour on manufactured causes.

**ANSWER:** The allegations set forth in Pages 6:2 through 8:23, styled as Plaintiff's Fraud #4 through Fraud #7 claims, were dismissed by the Court on June 30, 2023 [ECF 53], and therefore no response thereto is required. Defendant otherwise denies the allegations set forth in Pages 6:2 through 8:23 of the Amended Complaint.

On the morning of Jan. 29th, 2018 @ 11am, Ridenour was ordered to appear in the conference room where managers Eddy Copeland and Greg DeFehr were waiting.

**ANSWER:** Defendant denies the allegations set forth in Page 8:25-26 of the Amended Complaint.

Ridenour was welcomed back to duty from both of the previous two suspensions, but told to sit tight, not go anywhere, where they excused themselves from the room to retreat back to the manager's office where they informed plaintiff they had to make a follow-up phone call to HR and consult with their managers.

**ANSWER:** Defendant denies the allegations set forth in Page 9:1-4 of the Amended Complaint.

Upon returning to the conference room, managers Copeland and DeFehr then proceeded to open a new investigatory on plaintiff Ridenour, ultimately issuing a 10-day suspension this time.

**ANSWER:** Defendant denies the allegations set forth in Page 9:5-6 of the Amended Complaint.

During said meeting on the new suspension, manager Copeland began to bring up details of an old "false" customer complaint that had been settled, closed, and where plaintiff Ridenour had been found to be 100% "not at fault" by 2 separate Asset Protection agents out of West Sacramento.

**ANSWER:** Defendant denies the allegations set forth in Page 9:7-9 of the Amended Complaint.

After that meeting she then knowingly and intentionally invited union steward Jose Ruiz back to the manager's office where they showed him plaintiff's personnel file with the sole intention of manipulating him by revealing the false claim listed in the complaint of a derogatory racial slur, knowing that steward Ruiz would take it in the exact way he did.

**ANSWER:** Defendant denies the allegations set forth in Page 9:10-13 of the Amended Complaint.

After said meeting on Jan. 29th, plaintiff Ridenour and union steward Jose Ruiz discussed the new suspension meeting and Ruiz shared with Ridenour the information managers Copeland and DeFehr had shown him.

**ANSWER:** Defendant denies the allegations set forth in Page 9:14-16 of the Amended Complaint.

It is claimed by plaintiff that those actions were intentionally meant to harm Ridenour and influence steward Ruiz to not want to properly help Ridenour. That Copeland was relying on her personal friendship with steward Jose Ruiz and his wife, who Ruiz admitted to Ridenour was personal friends with "Eddy." Ms. Copeland.

**ANSWER:** Defendant denies the allegations set forth in Page 9:17-20 of the Amended Complaint.

## V. CONCLUSIONS

Title VII makes it unlawful for an employer to discriminate against any employee bc he has made a charge, testified, assisted, or "participated in any manner" in any investigation, proceeding, or hearing. 42 U.S.C. ss2000e 3(a).

**ANSWER:** Page 9:24-26 of the Amended Complaint calls for legal conclusions to which no response is required. To the extent Plaintiff misstates or misinterprets the statutory language cited in Page 9:24-26, Defendant denies the same.

Plaintiff Ridenour participated in a protected activity of the grievance process and additionally working through his union to investigate a claim of sexual harassment and was in turn retaliated against in direct violation of NRS 613.340.

**ANSWER:** Defendant denies the allegations set forth in Page 10:1-3 of the Amended Complaint.

Plaintiff feels that sufficient factual material has been provided; and if accepted as true, that on it's face is enough to state a claim to relief.

**ANSWER:** Page 10:5-6 of the Amended Complaint calls for legal conclusions to which no response is required. *See also* Order (ECF 53) (narrowing Plaintiff's fraud claim under FED. R. CIV. P. 12(b)(6)).

Plaintiff feels that the facts plead show a violation isn't just plausible, but probable.

**ANSWER:** Defendant denies the allegations set forth in Page 10:7 of the Amended Complaint.

## VI. DAMAGES

Back pay of $55,085.

Front pay of $40,000.

     Loss of retirement, loss of peak earning years for Soc. Sec. estimations and calculated interest, loss of benefits, tbd in Discovery.

     Union buy-out at retirement, $40k.

     Emotional distress and loss of enjoyment of life, $500k.

     Punitive damages, $750k.

     Exemplary damages, $500k.

     Re-Instatement.

## RESPONSE TO REQUESTED DAMAGES

**Defendant denies that Plaintiff is entitled to judgment in his favor, denies the propriety of each and every prayer for relief, and denies that Plaintiff is entitled to any relief.**

## DEFENDANT'S DEFENSES AND AFFIRMATIVE DEFENSES

Defendant asserts the following Defenses and Affirmative Defenses, subject to and without waiving the foregoing, without accepting any burden of proof on the matter, and in the alternative, if necessary:

1. Plaintiff fails to state a claim upon which relief can be granted.

2. Plaintiff's retaliation claims are barred by applicable federal and state statutes of limitations.

3. Plaintiff's retaliation claims are barred by Plaintiff's failure to exhaust administrative remedies.

4. Plaintiff's retaliation claims fail because Plaintiff has not alleged that he engaged in protected, concerted activity that could give rise to his retaliation claim under any theory of law.

5. Plaintiff's retaliation claims fail because any protected, concerted activity of the Plaintiff was not the but-for cause of his termination, and was otherwise not causally related to Plaintiff's termination, or any other materially adverse employment action, in any way.

6. At all relevant times, Defendant's actions and omissions regarding Plaintiff were undertaken in good faith and Defendant had objectively reasonable grounds to believe that its actions and/or omissions did not violate federal or state law.

7. Plaintiff's fraud claim must fail under the doctrine of unclean hands.

8. Plaintiff's fraud claim must fail because Plaintiff has failed to plead the same with sufficient particularity under FED. R. CIV. P. 9(b).

9. Plaintiff's fraud claim must fail because Defendant lacked the requisite intent to defraud.

10. To the extent any adverse employment actions taken by Defendant was improperly motivated, such motivations were not substantial and, in any event, Defendant would have taken the same adverse employment actions for legitimate reasons.

11. Plaintiff has not alleged any conduct warranting an award of punitive damages under any of her asserted theories of liability, and any award of punitive damages would otherwise be unconstitutional under federal and/or state law.

12. To the extent Plaintiff suffered damages, such damages were the result of Plaintiff's own actions or omissions.

13. Plaintiff's claimed damages (if any) are barred, in whole or in part, by Plaintiff's failure to mitigate his damages.

14. Defendant reserves the right to amend or add additional affirmative defenses as this litigation progresses.

Dated: July 14, 2023.

        Respectfully submitted,

        */s/Stacey Campbell*
        Stacey Campbell
        Colorado Bar No. 38378
        (admitted p*ro hac vice*)
        Campbell Litigation, P.C.
        1410 N. High Street
        Denver, Colorado 80218
        Telephone: (303) 536-1833
        Email: stacey@campbell-litigation.com

Elizabeth Fletcher
Nevada Bar No. 10082
Fletcher & Lee
448 Ridge Street,
Reno, Nevada 89501
Telephone: (775) 324-1011
Email: efletcher@fletcherlawgroup.com

**Attorneys for Defendant**
**Nevada Bell Telephone Co.**

### CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, I caused a true and correct copy of the foregoing **ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND** to be electronically filed with the Clerk of the Court using the CM/ECF System; in addition, notification of such filing was sent via First Class Mail to Plaintiff at the following address of record:

Steven Ridenour
5614 Churchill Green Dr.
Sparks, Nevada 89436
Ride777@hotmail.com
(775) 815-8501

*Plaintiff*

and to all counsel of record in this matter.

By: */s/ Lisa Forbes*
Lisa Forbes, Paralegal