Case 3:22-cv-00004-MMD-CSD

STEVEN RIDENOUR
7306 Koyuk River St.
Bakersfield, Ca 93311
775.815.8501
ride777@hotmail.com

STEVEN RIDENOUR, IN PRO PER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| STEVEN RIDENOUR<br><br>Plaintiff(s),<br><br>vs.<br><br>NEVADA BELL TELEPHONE CO,<br><br>DBA AT&T NEVADA<br>Defendant(s). | Case No.: 3:22-cv-00004-MMD-CSD<br><br>**MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS & EVIDENCE, AS WELL AS A MOTION TO COMPEL DEFENDANT TO PRODUCE A WITNESS TO APPEAR FOR A DEPOSITION**<br><br>**DATE: 7-02-2024** |

Plaintiff is now being forced to reach out to the Court and beg for the Court's assistance, to use their power and authority to compel the defendant, as plaintiff's back is to the wall and shouldn't be.

Plaintiff requested and was granted a 30-day extension on June 5th, 2024.

Discovery is due one week from tmrw., July 10th, 2024.

Plaintiff clearly outlined what they needed and intended to use the extension of time for:

MOTION TO COMPEL
- 1 -

1   To try to get answers, admissions, & the production of documents and audio files from the
2   defendant through plaintiff's Interrogatories, for the 2nd time since September/October of last year,
3   2023.
4   Plaintiff also intended to use the time granted to make the arrangements & reservations for the
5   deposition of plaintiff's old manager, Ms. Copeland, which plaintiff had accomplished with Veritext
6   Litigation Services in South Reno. (The same offices that defense counsel used for plaintiff's
7   deposition in May for the sake of convenience and familiarity.)
8   Plaintiff also submitted a request for the subpoena for his old Union to attain notes and documents
9   on grievances filed back in 2018 during the time when all of these illegal business practices were
10  taking place.
11  Even though defendant opposed the plaintiff's request for the extension of time, when the Court
12  granted plaintiff's request, defendant was already aware and informed of plaintiff's intent, list of
13  items to be completed, and the time frame in which plaintiff was going to have to accomplish them
14  by in order to meet the new discovery deadline.
15
16  As disclosed previously, plaintiff was to receive the responses to their interrogatories from
17  defendant by Friday, June 28th, 2024.
18
19  Plaintiff spent 2 weeks up in Reno preparing to complete their discovery, June 11th through June
20  24th.
21
22  On June 20th (3 weeks prior to deadline) plaintiff reached out to defendant by email to inquire about
23  picking a suitable date for Ms. Copeland to appear at the Veritext offices the week of July 1st
24  through July 5th.
25  Bearing in mind that the defendant's interrogatory responses were expected just the Friday before,
26  June 28th,  but plaintiff was going to make due and make it all work regardless, to finish in time, by
27  July 10th.
28

1  Also worth noting, defendant is aware of the week to 10 days turnaround time for the stenographer

2  to produce the transcript as defendant already used the same company's services in May.

3

4  Defendant initially didn't respond, but upon a second email communication on Monday, June 24th,

5  defendant did respond by first flatly informing plaintiff that no deposition would take place the

6  week of July the 1st. Which basically amounts to plaintiff being prevented from the ability to depose

7  Ms. Copeland by the defendant (knowingly), which was one of the main reasons the extension of

8  time was sought, and assumed granted.

9  Secondly, the defendant then made the request of the plaintiff to see if plaintiff would approve

10 opposing counsel's request for 1 extra week to get their responses sent over.

11

12 Plaintiff is going to attach the emails to this motion as Exhibit A.

13

14 2 issues have now arisen.

15

16 One, after defendant shot-down the request to help set a day for Ms. Copeland's deposition, they

17 stated that they would confer with their client and see how they wished to proceed [on the issue of

18 plaintiff's old manager's sitting for a deposition] and get back to plaintiff. (That has yet to have

19 happened.)

20

21 The second issue is, as plaintiff feared, defendant AT&T for a second time COMPLETELY refused

22 to answer a single question, side-stepped every request for admission, and AGAIN (for the second

23 time now) refused to provide a single document or item of evidence requested by plaintiff.

24

25 Here is an email from opposing counsel from January 17th where they are very specific about

26 individual documents and pieces of evidence that they were seeking, "for their review," and

27 informing plaintiff that:

28

As a reminder, you were obligated to produce these documents for our review on October 27, 2023. As such, failure to produce the above documents by our deadline will result in us filing a Motion to Compel. We look forward to your response.

**From:** Stacey Campbell <stacey@campbell-litigation.com>
**Sent:** Wednesday, January 17, 2024 1:08 PM
**To:** Steve Ridenour <ride777@hotmail.com>; Robert Thomas <Robert@campbell-litigation.com>
**Cc:** Ashley Graves <Ashley@campbell-litigation.com>; Carolyn Heyer <Carolyn@campbell-litigation.com>
**Subject:** RE: AT&T/Ridenour - Additional Requests for Documents and Deposition Dates (Response due Friday, January 19, 2024)

Mr. Ridenour,

We are contacting you regarding your still outstanding responses to our Requests for Production. More specifically, we request that you produce the following by this Friday, January 19, 2024:

- The text messages you reference in your response to Interrogatory #7 exchanged between yourself, Jose Ruiz, and Petula Vierja following your termination;

- Your tax forms you reference in your response to Interrogatory #11;

- All documents and AT&T policies you relied upon in calculating your damages, in particular, the closing statement for the sale of your home and any documents evidencing the renovations you allege to have completed on your home (Interrogatory #13).

As a reminder, you were obligated to produce these documents for our review on October 27, 2023. As such, failure to produce the above documents by our deadline will result in us filing a Motion to Compel. We look forward to your response.

Also, please provide available dates in January up to February 9, 2024, that you would be available for your deposition so we can get that scheduled.

Thanks,

Stacey Campbell
1410 N. High St.
Denver, Colorado 80218

Plaintiff seeks the Court's clarification, because plaintiff is at a loss as to how it is that the defendant can make the demands of all their requested documentation, but they also allow

1  themselves to flatly deny the plaintiff any evidence that plaintiff has been requesting, [also] since

2  October of last year?

3

4  Next, defendant had made this assurance to the plaintiff on Monday, April the 22nd of 2024:

5

6                                                            Mon 4/22/2024 12:46 PM

   Mr. Ridenour,

7

   We will work with you on producing Eddy for her deposition, the day after we depose you, assuming

8   that time works for her to be deposed.

9     Thanks,

10   Stacey Campbell
   1410 N. High St.
11   Denver, Colorado 80218

12

13  Back to this twin Motion(s) to Compel and repeating that the Court had granted an extension in
part, and denied an extension in part, that Discovery was (and is) DUE by July 10th, 2024.

14  Plaintiff, at significant expense and effort, attempted the needed timely actions. Plaintiff has
attempted to exercise their due diligence and seek to make all arrangements necessary and set up the
15  facilities and court reporting and videographer professionals to just barely get Ms. Copeland's
deposition taken, while hoping against hope that the transcripts and videography would be able to
16  be "expedited" [at another significant expense] to just make it in by the discovery deadline.

17  It was possible before the defendant intentionally sabotaged the plaintiff's best efforts.

18  The defendant was well-aware of the deadline and "timing being of the essence" to complete and
conclude the discovery phase by the Court's new set deadline.
19
It is the plaintiff's absolute belief that opposing counsel for the defendant did intentionally and with
20  deliberate effort attempt to prevent plaintiff from being given the opportunity to complete their
tasks within the allotted time given/set by the Court.
21
Not only that, but the plaintiff also feels that the defendant was purposely deceptive and tried to
22  trick them, in trying to make the plea to the plaintiff to allow opposing counsel to be allowed to
provide what turned out to be their blanket denial of any requested answers, any admissions, or
23  items or documents requested, until what would have been July the 5th.

24  Defendant knew they were going to be submitting another complete stonewalling of the plaintiff's
attempts at their interrogatories, yet they wanted to see if plaintiff would be a 'nice guy' and allow
25  himself to be suckered into letting them hand over what turned out to be absolutely nothing, but it
would have been just 5 days before the end of discovery.
26
It is these reasons why plaintiff is now in this impossible Catch-22 position. And it is plaintiff's
27  opinion that this is totally unfair and is requesting some accommodation and relief to be provided
by the Court.
28

1  Plaintiff's question is this: How is it that plaintiff "is obligated" to provide every requested document and/or item of evidence to the defendant, but the defendant is not obligated to provide
2  discoverable documents and various evidence items, to include audio conversations clearly explained? Twice.
3
   Plaintiff is completely frustrated in their attempt to gather their needed discovery items and
4  documents and could have made it in time were it not for the defendant's deliberate torpedoing of plaintiff's efforts.
5
   Going back to late last year in Sept./Oct. the defendant has continuously portrayed every request for
6  discovery items by plaintiff as "not related," or "extraneous," or that of "wouldn't lead to the discovery of any valid information that would benefit" plaintiff's claims of "retaliation or fraud."
7
   To which plaintiff vehemently disagrees, to no avail.
8
   More importantly, numerous requests for documentation and the requested audio of the specific
9  phone conversations plaintiff have repeatedly asked (and had to argue) for, only to be flat-out denied.
10
    Many items being requested are vital to plaintiff as they are going to be needed to directly refute
11  charges and accusations the opposing counsel has already questioned plaintiff about, for example – the specific details of the repair ticket on the evening of December the 14th, 2017.
12
13  Defendant conveniently makes dismissive excuses/remarks to plaintiff's requests for answers, admissions, and production of documentation as not pertaining to plaintiff's claim's of retaliation
14  and the one of fraud, but is intentionally disregarding the fact that plaintiff is entitled to ask questions to prepare for the allegations that are anticipated, evidenced by the company reports and
15  Exhibits already presented by defendant at plaintiff's deposition.

16  The defendant is attempting, and wholly succeeding, in preventing plaintiff from acquiring any and all discovery evidence to first even establish the starting point and fundamental basis for plaintiff's
17  retaliation claims. Defendant has refused to even offer a direct response to a single question asked, or make a single admission when the request is clearly delineated. Just an absolute refusal to
18  address head-on a single point of the plaintiff.

19
    So before I list individually every item that I'm requesting, that I thought the defendant was also
20  "obligated" to produce [in good faith], I would like to formally request that the Court compel and order the defendant to work with the plaintiff to, FIRST, set a date for Ms. Copeland to appear for
21  her deposition. In the next couple of weeks, the earlier the better.

22  The plaintiff does not know how this works.
    The plaintiff does not know if when, or were, the Court would agree, and order to compel the
23  defendant, if that would allow for the additional time on the calendar for these actions to be allowed to proceed and be completed without a new Request for Extension of Time, or if the plaintiff needs
24  to make a fresh Request for Extension of Time.

25  I, plaintiff Ridenour, am basically asking the Court's intervention in these matters as all plaintiff's efforts to accomplish these preparations with mindful care and in good faith, and with the Court's
26  deadline in mind – have been thwarted at every turn by opposing counsel.

27  Defendant has ignored the implied instructions and clear objectives of the plaintiff and chosen instead to employ legal tricks and tactics, maybe short of mocking the court, but manipulating what
28  they could to prevent the plaintiff from accomplishing their last discovery needs.

And the plaintiff would also now like to request that the Court compel and order the defendant to supply these individual items, despite their previous denials of such materials, or "of possessing said materials." (Again: It is unconscionable by opposing counsel to suggest that AT&T, 'the' phone company, doesn't have access to, or somehow can't produce these requested materials.)

Requested production of documents:

The AT&T company printout of all text messages sent between plaintiff (Steve Ridenour) and (manager) Ms. Copeland on the evening of November 21st, 2017, between both of their work cell phones. (If it helps, plaintiff's work cell # was 775.813.4737, and I believe Ms. Copeland's work cell phone was 775.291.7021).

Justification: Plaintiff has already submitted (& will be re-submitting with the final, complete stack of discovery documents they will be using) -- the official statement/report of NERC Investigator Richard Brown of Reno where AT&T as the Respondent, when Mr. Brown questioned the parties for his investigation, his report states that:

the defendant denies/"found no evidence that Ms. Copeland texted you stating that she was off duty at a party drinking alcohol." [Her texts on the evening of December 21st, 2017 directly contradict that statement.]

Continuing:

"The Respondent claims they found no evidence of text messages between you and Ms. Copeland, other than matters relating to work.

Next, see: texts sent from Ms. Copeland to plaintiff on November 21st, 2017 where she inquires:

"So what are we doing?.. 2 martini glass emojis.. Haha.. One of my old techs used to say that his beers were getting lonely in the fridge lol.."

Continuing w/ the NERC's statement from November 6, 2020,

"On November 21, 2017 you sent a martini emoticon text to Ms. Copeland without any accompanying message."

Plaintiff never sent any such message, let alone a "martini emoticon."

The defendant made those statements to the Nevada Department of Employment Training and Rehabilitation investigator, and they are false.

I intend to hold them to account and explain their false claim.

And, with the printout of the text conversation, it will be clear for all to see who is telling the truth and who is/was not.

Continuing w/ the NERC statement for the purposes of finishing plaintiff's argument as to why they are requesting the Court to compel & order the defendant to furnish these text documents:

AT&T as Respondent further asserts, "The Respondent acknowledged that Ms. Copeland 'sent you an emoticon martini text as well' but it was in response to your initial texts and was in no way meant to insinuate a proposal for a romantic engagement outside of work."

1  So, they deny that "they found any evidence of Ms. Copeland texting [me] stating that she was off duty at a party drinking alcohol," yet on the evening of December 14th, 2017 she sent 4 quick texts
2  that stated:

3  And my #1 thing.... food // TG for (emojis of 2 champagne fluted glasses toasting) // I only know one person here at this party // How is it going?
4  They then say that "they found no evidence of text messages between you and Ms. Copeland, other than matters relating to work."
5
   Then they accuse [me]/plaintiff of sending manager Copeland (my boss) a martini emoticon text.
6
   Then they turn right around and contradict themselves and state, The Respondent acknowledges that
7  Ms. Copeland sent you an emoticon martini text as well but was in response to your initial text," etc.
8
   So, the text printouts for the evenings of November 21st and December the 14th of 2017 should
9  easily be deemed as pertinent as they establish the very basis, or starting point to which Ms. Copeland's retaliation would derive from.
10
   And it also shows that she was dishonest when they were investigated by the NERC.
11
   These texts also will prove [at trial] that Ms. Copeland knowingly and willfully violated the AT&T
12  company policy on Personal Relationships.

13  Plaintiff has the screenshots of manager Copeland's texts, but also seeing as how she and the company, both, have admitted to the text messages – plaintiff must demand that the company
14  furnish the actual documentation of them.

15  It's important to note that plaintiff is very interested to see where exactly they will show the proof of what they stated, that plaintiff sent "a single martini emoticon with no accompanying text."
16
   Plaintiff would like to review the phantom text, myself, and be able to make it available at trial for
17  the jury, to be entered into evidence in conjunction with the NERC's official "Respondent's statement."
18
   Additionally, the evening of December 14th, 2017, those texts took place while manager Copeland
19  was in fact "off duty," "at a party," "drinking alcohol," and reaching out to plaintiff to see what he was up to, etc.
20
   Plaintiff was on a repair ticket that opposing counsel questioned plaintiff about extensively, touting
21  the company's positions and narratives, where manager Copeland spun a completely different telling of what truly happened that evening while plaintiff was on that repair job.
22
   She also falsified her internal company reports to reflect an alternate story that she then in turn used
23  to manufacture allegations and charges against plaintiff, where she imposed suspensions and caused the loss of potential earned income.
24
   And Ms. Copeland also intentionally used her own telling of her fictiously-created events as her
25  basis for her own intentioned justification to terminate plaintiff from his employment.

26  Upper management then immediately discovered the truth, after plaintiff went through his Union and filed grievances, to investigate her texts which were a violation of company policies and the
27  proof of her acts of retaliation. [To which defendant's opposing counsel refuses to address and admit.]
28

MOTION TO COMPEL
- 8 -

1  That defendant/opposing counsel attempts to gaslight and make the claim that plaintiff's requests for the production of the printout of the text messages from Ms. Copeland are extraneous or not
2  likely to lead to the discovery of any information that could be useful in plaintiff's claims of retaliation are nonsensical and belligerent in light of the actual facts.
3
   But!, the defendant has now twice slammed the door on plaintiff's requests for the text message
4  printouts.

5  Next: The audio recording of the phone calls that took place between manager Copeland and plaintiff on the same evening of December 14th, 2017.
6  Defendant submitted numerous Exhibit's at plaintiff's deposition where the reports, [written by Ms. Copeland], make charges and allegations of major COBC violations by the plaintiff, and portray,
7  again, a completely alternate version of what actually transpired that evening while the plaintiff was on that repair ticket and manager Copeland was off-duty, at a party, and then later manufacturing
8  and falsifying company records and documents to fit her narrative, that she used to bring trumped-up allegations against plaintiff.
9
   The requested audio of the phone calls from that evening [Dec. 14th, 2017] will let everyone hear for
10 themselves. Then they, the jury, can take into account all the written documents and claims Ms. Copeland makes in the rest of the defendant's Exhibits and decide for themselves who's telling the
11 truth.

12 The defendant/opposing counsel has completely shut plaintiff down as to being provided with the documentation plaintiff requires to show/demonstrate the various events that took place, all
13 choreographed by manager Copeland, and subsequently the other named managers after Ms. Copeland was transferred out of the Reno yard within a week or two of the plaintiff seeking the
14 assistance and protection of his Union, and Title VII protections afforded him under federal statute.

15 State law prohibits employers and their managers/supervisors from singling any employee out for discipline where the manager does not apply the same discipline evenly to the other employees.
16 Ms. Copeland again manufactured a sampling of stats, whether plaintiff is actually guilty or not, and used her data to build another charge against plaintiff, in an attempt to make a mountain out of a
17 molehill, but strategically to affect her desired outcome.

18 Plaintiff requested the production of documents, for defendant to gather the same data that Ms. Copeland compiled on plaintiff for any tardies at the start of plaintiff's shift, or [in minutes] any
19 minutes past 30 minutes at lunch break not dispatched, for manager Copeland's team, to include plaintiff. ((As stated in interrogatory requests.. "for fair comparison" as it was "a common practice"
20 amongst all plaintiff's co-workers, all techs, not just plaintiff)), tables created as a spreadsheet, but for all the guys on manager Copeland's team for times "on-site to first job of shift" and breakdowns
21 of minutes on lunch breaks for November & December of 2017 and January of 2018.

22 Note: It is not a so-called (paraphrasing) over-burdensome request.

23 HR can enter the 13-15 UUID employee ID numbers one time into the search and enter the search parameters and literally 2 seconds later the printer is printing out the print-out.
24
   I know for fact that there were numerous guys on my team that regularly abused those policies for
25 being to the first job of the day by 45 minutes to an hour multiple times a week. (I had a small handful of minor tardies, but I was never a time-waster.)
26
   As opposing counsel without question is going to attempt to make plaintiff appear to be the
27 equivalent of an axe-murderer (not really), I am asking the Court to compel the defendant to furnish the group's results so that plaintiff can be fairly judged when that moment arrives at trial.
28

MOTION TO COMPEL

Next: I am requesting that the Court compel defendant to provide the audio of the phone conversation that took place between the plaintiff (again, work cell phone #775.813.4737) and TSC (Tech Services Center) for the evening of February 26th, 2018. Call duration was approx. 1 hour and 15 minutes.

Justification: Defendant's Exhibit #13 used in plaintiff's May 29th deposition.. There is no date on it, but the context of the company document of the report has manager Greg DeFehr making his own statement of fact/denial that he had gone on my [plaintiff's] devices, yet the phone conversation will demonstrate proof that manager Greg DeFehr did in fact do exactly that. The day before plaintiff was brought back to duty and re-issued his company wireless devices (iPhone & iPad).

The Tech Services Center agent states out loud manager Greg DeFehr's UUID and identifies him directly as the one who changed both of plaintiff's passwords on plaintiff's devices.

It all goes to demonstrating that manager DeFehr was acting with less than the integrity, and ethically per each employee at AT&T are expected and responsible to live up to, with our customers and especially each other.

It's important as just one small piece of the puzzle, but for plaintiff to be able to show the jury all the little things that make up the whole. Please?

Next: Plaintiff is requesting the production of manager Copeland's disciplinary record.

Plaintiff's arguement is that her record of discipline may well reveal that she has had complaints and/or grievances filed on her in the past by other employees under her direct authority. Plaintiff has been told that Ms. Copeland had an incident in Moundhouse yard just prior to her arrival at the Reno yard on Capital Blvd. where (reportedly) Marc Ellis was the tech's steward in that action, whether another of manager Copeland's trunped-up & manufactured disciplinaries on another tech, or possibly a complaint of harassment or retaliation against her. (Marc Ellis is the current CWA Local 9314 President).

Plaintiff would like to be able to review Ms. Copeland's disciplinary record to determine if she had in fact ever been accused of retaliation or harassment of any kind before, for the purpose of discovering if there had been any previous issues and therefore if AT&T/the company had prior knowledge of her proclivity to deal fast and loose with whichever company policy she didn't feel like observing, as evidenced already by her claim of "One of my old techs used to say that his beers were getting lonely in the fridge lol.. "

I have no idea how opposing counsel can think they are justified in making the call that they don't have to produce that documentation for plaintiff's review.
Interpretation: If there is nothing to discover, then there shouldn't be any problem. Right?
On the other hand.. If there were any previous instances and management should have known, and therefore done something to intercede when plaintiff sought the assistance and protection of his union representation, when Ms. Copeland's text messages were being discussed (reason she was transferred out of Reno), and they chose to allow plaintiff to be terminated instead of stepping in and putting a stop to what Ms. Copeland had initiated, to cover-up indiscretions solely commited by herself, then plaintiff should be provided the ability to discover any record of such.

Next: Basic housekeeping. Plaintiff requested the production of the signed AT&T company COBC policy for Ms. Copeland. It's jordain.
Defendant provided plaintiff's signed copy of his COBC company policy form. Every employee is required to review and sign it once a year.
As defendant will undoubtedly present plaintiff again with his signed company COBC form to put him on record at trial, there is NO REASON why plaintiff is being denied the same basic item of documentation.

Because Ms. Copeland too is responsible to uphold the contents of that document. Plaintiff intends to present manager Copeland with the very same policy and then have her answer as to why she feels that she was justified in violating said policy.

Next: Defendant presented plaintiff's disciplinary record as a specific Exhibit at plaintiff's deposition. There is an instance that is listed by the date of 10-20-2016. Asset Protection investigated that complaint and ultimately found plaintiff was "not at fault" on all allegations.

The truth is that the Asset Protection agent stated to myself [plaintiff] and my union steward, Justin Roberto, that he had been an investigator for some 23 or 26 years and that it was obvious to him that "Mr. Ridenour isn't a threat to anyone. He's not a threat to any customer or any other employee." That "it's obvious that the customer had some sort of a personality conflict (paraphrasing) or something and decided she wanted to try and get her tech in trouble." That he'd seen that too many times to count. Unfortunately, HR has produced their own "re-telling" of that event and stated, "10/20/2016: Records of a customer complaint due to Inappropriate conduct. Asset Protection and HR investigated the case. Results came back inconclusive," ... (adding) "because customer refused to cooperate with AP in fear of retaliation."

The Asset Protection agent stated that the customer was flakey and had refused to return any of the other investigators voicemails either.

Defendant has claimed that they don't possess those records. (Which stretches the limits of credulity, frankly.)

The AP agent actually typed-up "my [plaintiff's] statement, had me review it, and just sign it (if it "looked alright.")

Plaintiff is requesting that the Court compel the defendant to provide the printout of the final report on that incident, despite their claim that there isn't a final report in plaintiff's HR file.

In summary:

Plaintiff is requesting that the Court would see how the defendant has operated in bad faith and employing underhanded tricks to prevent the plaintiff from attaining the discovery items that the Court already granted the last extension for just that purpose.

Plaintiff is requesting that the Court would recognize that the defendant did not attempt to give a good faith answer to a single interrogatory question, but instead made use of the exact same boilerplate "responses" and excuses on every one of them. Not one response even speaks to, or comments in a direct manner to the subject of any question or request for admission.

Code of Civil Procedure S 2030.220 [responses to interrogatories must be "complete and straightforward: and "answered to the extent possible."

The defendant has not met the minimum requirements or acted in good faith with their "responses."

Plaintiff also needs to point out that the defendant assured the plaintiff that they would make Ms. Copeland available to sit for the one deposition that plaintiff sought to collect, but then changed their stance 180 degrees, and has now taken the tact of conveniently not having her available – at the very end of the discovery phase.

Plaintiff hustled to make all the arrangements and had figured out a way to accomplish all of the last discovery items to be gathered within the 30-day extension that the Court had granted.

1  The Defendant attempted to trick the Plaintiff at the last minute and would have "provided" the interrogatory non-responses just 5 days before the deadline, and they knew they were not going to
2  be providing any type of answers or providing a single request for documentation by plaintiff.

3  The Plaintiff would like the Court to compel the Defendant to answer their interrogatory questions, address their requests for admissions and not give the same patent responses and denials, and the
4  plaintiff would like the Court to compel the defendant to provide the requested documents that are most certainly in the defendant's possession and/or can be produced and furnished and order the
5  defendant to dispense with the boilerplate excuses and false reasonings.

6  The plaintiff is requesting that the Court would allow the time left in discovery to be tolled and order the defendant to communicate with the plaintiff to help them arrange a date for Ms. Copeland
7  to sit for her deposition.

8
**The plaintiff will submit a separate motion to request an Informal**
9  **Discovery Conference to the Court to discuss these matters.**

10

11

12

13

14

15 Thank you.

16 Sincerely,

17

18

19

20 DATED: 07-02-2024

21                                                             */s/ Steven Ridenour*
                                                              Steven Ridenour
22                                                             In Pro Per

23

24

25

26

27

28