UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN RIDENOUR,<br><br>    Plaintiff,<br> v.<br><br>NEVADA BELL TELEPHONE CO.,<br>d/b/a AT&T NEVADA,<br><br>    Defendant. | Case No. 3:22-cv-00004-MMD-CSD<br><br>ORDER |

**I. SUMMARY**

Pro se Plaintiff Steven Ridenour sued Defendant Nevada Bell Telephone Company ("AT&T")[1], asserting claims arising from his former employment and termination. After the Court resolved the last motion to dismiss, Plaintiff has two claims—for retaliation and fraud—remaining. (ECF No. 53 ("Order").) Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 53 ("Motion")[2].) Because

---

[1] AT&T is the sole remaining Defendant in this case after the Court dismissed Defendant Communications Workers of American Union Local 9413 in an earlier-issued order. (ECF No. 38 at 13-14.)

[2] Plaintiff filed a response (ECF No. 107 ("Response")), and Defendant filed a reply (ECF No. 109). Defendant also filed a motion for leave to file the Motion under seal, arguing that compelling reasons exist to seal the Motion and exhibits and that redacting the confidential business and personal information would render "the documents incomprehensible or useless for the Court's consideration." (ECF No. 104 at 3.) The Court agrees that Defendant has demonstrated compelling reasons exist to seal some exhibits (specifically, Exhibits F and G, which contain confidential business information). Accordingly, the Court grants the motion to seal as to Exhibits F and G but denies it as to the remaining exhibits. The Court is not persuaded that compelling reasons exist to support sealing all exhibits. For example, it is not apparent that Exhibits D or A contain any information that supports sealing. Moreover, the fact that some exhibits may contain the personally identifiable information of Plaintiff or of a customer does not support sealing the entire exhibit because the sensitive information may be redacted. Defendant accordingly must redact confidential personal information and file redacted exhibits on the docket. The Court also grants the motion to file the Motion under seal, but Defendant is directed to file a redacted version of the Motion on the

Defendant has demonstrated legitimate business reasons for the employment decisions Plaintiff challenges in this case, and Plaintiff has not offered any admissible evidence that the decisions are a pretext for retaliation—and as further discussed herein—the Court grants the Motion.

## II. BACKGROUND[3]

Ridenour was employed as a premises technician for AT&T from November 2013 to March 2018. (ECF No. 105-1 at 8, 138-141.) Ridenour's job responsibilities primarily involved the installation and troubleshooting of AT&T-provided equipment, such as cable television or high-speed internet inside customers' homes. (*Id.* at 12-13.)

Starting in January 2015, Ridenour was disciplined for violating AT&T's company policies. One category of policy violation relates to dealings with customers.[4] Between January 2015 and January 2018, AT&T received four customer complaints involving Ridenour. In January and June 2015, Ridenour's supervisor, Brian Lim, counseled him about separate incidents of customer complaints that Ridenour had engaged in unprofessional conversations with customers involving politics and religion. (*Id.* at 108-113.) As a result of the second complaint, on June 12, 2015, Lim placed Ridenour on "Warning of Suspension up to and including dismissal." (*Id.* at 108.) In October 2016, Lim spoke with Ridenour about a customer complaint that he had made comments about biblical scriptures and, in effect, said, "President Obama, all Mexicans and gays should be shot,"[5] which the customer found "really scar[y]." (*Id.*) On January 18, 2018,

---

docket as well. Defendant has seven days from the date of this order to file the redacted documents.

[3]The following facts are undisputed unless otherwise noted.

[4]Section 20.1 of AT&T's Premises Technician Guidelines ("PTG") provides, in pertinent part, that "all customer contacts should be positive, professional and appropriate." (ECF No. 105-1 at 83.)

[5]When this complaint was discussed with Ridenour in a January 29, 2018, meeting, Ridenour disputed the customer's complaint and maintained that "Asset Protection cleared [him]." (ECF No. 105-1 at 109.) In his Response, Ridenour denied he would "threaten[] the life of a sitting President (at the time)" and insisted that, after an

an AT&T employee informed his supervisor of a customer's complaint, claiming that Ridenour talked to her about God and about his relationships with women. (*Id.* at 115-118.)

Another category of policy violation relates to Ridenour being "out of route."[6] On March 3, 2017, while Ridenour was still under a "Warning of Suspension" related to the second customer complaint incident, he was counseled for being out of route during his lunch breaks. (*Id.* at 62.) On September 1, 2017, a manager (Christian Debnar) placed Ridenour under another "Warning of Suspension" for exceeding the time allotted for lunches at home. (*Id.*) On December 21, 2017, Ridenour's then supervisor, Edenir (Eddy) Copeland,[7] addressed seven incidents of Ridenour being "out of his route" in December 2017.[8] (*Id.* at 62-67.)

On December 21, 2017, Copeland met with Ridenour to discuss his violation of AT&T's policy prohibiting employees from driving home for lunch and exceeding the 30-minute limit for meal breaks. (*Id.* at 62-63.) That same day, they discussed two other disciplinary matters. (*Id.* at 120-124.) She placed Ridenour on a five-day suspension from work—January 22, 2018 to January 27, 2018—without pay. (*Id.* at 66.)

///

---

investigation, he "was found to be 'not at fault on any and all claims by that customer'." (ECF No. 107 at 3, 4.)

[6]Section 10 of the PTG provides that technicians "may not drive a company vehicle out of route on work time without prior supervisor approval." (ECF No. 105-1 at 78-79.) This section further explains when a technician may use the company assigned vehicle to go home for rest and meal periods so long as they do not exceed the time allotted for the breaks. (*Id.*)

[7]Copeland became Ridenour's supervisor on October 1, 2017. (ECF No. 105-1 at 62.)

[8]In his Response, Plaintiff explained that he did not exceed the 30-minute dispatch under AT&T's policy because Lim had instructed that he "should pull around the corner to make his pre-call to the next customer and run his tests before being en route to cx premises." (ECF No. 107 at 5.) He insisted that the extra time in excess of the 30-minute lunch was time he spent "around the corner" performing tasks needed for the next job. and "[i]t is not the plaintiff's fault that the GPS shows him appearing to still be at his house just because the GPS ping indicator looks adjacent to his home residence." (*Id.* at 5.)

On January 29, 2018, Copeland and Greg DeFehr, Ridenour's supervising manager, met with Ridenour and a union representative to discuss Ridenour's return to work following the suspension and the fourth customer complaint. (*Id.* at 126-129.) Ridenour was placed on suspension pending an investigation into the fourth customer complaint. (*Id.* at 129.) He returned to the office on February 26, 2018 for a meeting with Copeland, DeFehr, and the union representative, where they addressed the result of the investigation and outlined their expectations for Ridenour, which included "five 'coverages' (online training modules and reading assignments)," and issued a fourth warning, which included the possibility of dismissal for violations of company policies. (*Id.* at 131-133; ECF No. 105 at 13.) After that meeting, Ridenour left work and returned home to complete the online trainings. (ECF No. 105-1 at 135-136.) Ridenour testified that while no one explicitly informed him that he had permission to complete the online training from home, he "gleaned" from the discussion that he had "implied consent" to do so. (*Id.* at 51-53.) The reason, as he testified, "because I mean, I wasn't working, I wasn't dispatching. I was on a half day. So I used my 15-minute break to drive home. And then I worked from home."[9] (*Id.* at 51.)

On March 1, 2018, DeFehr and Steven France, Ridenour's manager, interviewed Ridenour as to the reason he left work on February 26, 2018 to complete the online training from home. (*Id.* at 135-136.) On March 22, 2018, DeFehr and France informed Ridenour of the results of their investigation into his departure from work on February 26, 2018, without prior supervisor approval, concluding that his conduct violated AT&T's policies. (*Id.* at 138-141.) Ridenour was notified of his employment termination at the same time.

///

///

---

[9]Ridenour disputes AT&T's suggestion that he left without authorization. According to Plaintiff, he was "given verbal permission to take [his] devices (iPad & iPhone) home, but just that first night. And, instructed to complete [his] training that [he] would find in [his] company email," which he "eventually did." (ECF No. 107 at 10.)

4

Ridenour subsequently initiated this action.[10] His claims for retaliation and fraud survived the last motion to dismiss. (ECF No. 53.) As to retaliation, Ridenour alleges that his direct manager, Ms. Edenir (Eddy) Copeland, violated AT&T's sexual harassment policies by sending him inappropriate text messages in November and December 2017.[11] (ECF No. 39 at 3; ECF No. 46-1 at 2.) Ridenour alleges that he engaged in a "protected activity" by submitting two separate grievances to his union steward (Thomas Golding) on January 29, 2018, and by discussing Copeland's alleged sexual harassment with another union employee on January 30, 2018. (ECF No. 39 at 3.) Ridenour alleges that Copeland and her successors, Greg DeFehr and Steve France, began to retaliate against him in February 2018. (*Id*. at 3-4.) Ridenour claims that he suffered the following retaliatory actions: Copeland extending his suspension after she learned that Ridenour filed a grievance with his union against her (retaliation 1); DeFehr changing the passwords on Ridenour's devices without informing Ridenour (retaliation 2); DeFehr investigating Ridenour for being "out of route" after he was given permission to work from home (retaliation 3); and DeFehr and France firing Ridenour for being "out of route" (retaliation 4). (*Id*. at 4-5.) As to the fraud claim (alleged in claims 1-3), the Court restricted the claim to DeFehr's alleged false representation that Ridenour was permitted to complete three online training modules at home and had been ordered not to dispatch any jobs or tickets that day. However, DeFehr then claimed Ridenour was "out of route" on February 26, 2018 and proceeded to open a new investigation. (*Id.* at 5.)

## III. DISCUSSION

Defendant seeks summary judgment on the two remaining claims: (1) retaliation under Title VII and NRS § 613.340; and (2) fraud. The Court will address each claim in turn.

---

[10]The Court rejected AT&T's argument in its prior motion to dismiss that Ridenour failed to exhaust his administrative remedies. (ECF No. 53 at 3-6.)

[11]The Court dismissed Plaintiff's sexual harassment claims. (ECF No. 38 at 5-8.)

### A. Retaliation

Defendant argues that the undisputed facts do not support the essential elements of the retaliation claim and that Ridenour cannot offer evidence showing that the legitimate reasons given for the adverse employment actions were a pretext for retaliation. In response, Plaintiff disputes Defendant's factual statements relating to customer complaints and to the reason he left work on February 26, 2018. However, the Court agrees with Defendant that Plaintiff's disputed facts are either contrary to the undisputed records or are immaterial and, therefore, insufficient to defeat summary judgment.

A prima facie case of retaliation requires a showing that: (1) the plaintiff engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between these two events. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).[12] Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for retaliation. *See Stegall v. Citadel Broad. Co. et al.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004).

A plaintiff can show pretext in two ways: either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 1068 (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)). A plaintiff must present "very little evidence" of pretext to survive summary judgment. *Id.* at 1072.

Here, Plaintiff alleges the following adverse employment actions in support of his retaliation claims: Copeland extending his suspension after she learned that Ridenour

---

[12] Nevada looks to federal law for guidance on retaliation claims because Nevada retaliation claims are "substantially similar" to retaliation claims under Title VII. *Curls v. Clark Cnty. Sch. Dist*, No. 2:16-cv-00979-JAD-PAL, 2017 WL 1228409, at *2 (D. Nev. Mar. 31, 2017); *see also Pope v. Motel 6*, 114 P.3d 277, 281 (Nev. 2005); *Hirshhorn v. Sizzler Rest. Int'l, Inc.*, 913 F. Supp. 1393, 1398 (D. Nev. 1993).

filed a grievance with his union against her (retaliation 1); DeFehr changing the passwords on Ridenour's devices without informing Ridenour (retaliation 2); DeFehr investigating Ridenour for being "out of route" when he was given permission to work from home (retaliation 3); and DeFehr and France firing Ridenour for being "out of route" (retaliation 4). (ECF No. 53 at 4-5.)

Defendant argues that DeFehr's changing of the passwords on Ridenour's devices does not amount to an adverse employment action. Under Title VII, an adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of ... employment." *Chuang v. Univ. of Cal., Davis Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000). The Ninth Circuit has held that various forms of conduct amount to adverse employment actions. *See, e.g.*, *Davis v. Team Electric Co.*, 520 F.3d 1080, 1090 (9th Cir. 2008) (holding that an employee's exclusion from an important area of the workplace, together with discriminatory allocation of hazardous work assignments, materially affected the terms and conditions of the employee's employment); *see also Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002) (holding that assignment of more, or more burdensome, work responsibilities constitutes adverse employment action). However, rude or offensive comments—or mere ostracism—do not constitute adverse employment actions. *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112-13 (9th Cir. 2000) (finding that the plaintiff did not suffer an adverse employment action when she was repeatedly mocked and treated with hostility).

Here, Ridenour does not contend that the change in his passwords led to any effect on his employment or that he suffered any damages from the change of the password, itself. In fact, Ridenour alleges he was eventually able to reset his passwords with some assistance from "tech services" and complete his trainings. (ECF No. 39 at 4-5.) In his Response, Ridenour argues that he was "forced to spend an hour and 15 minutes on the phone with Tech Services Center getting assistance to reset both employee passwords." (ECF No. 107 at 8.) But the time spent did not 'materially affect

his terms and conditions of employment' sufficient to amount to an adverse employment action establishing a prima facie case of retaliation. *See Chuang*, 225 F.3d at 1126.

As for the three remaining adverse employment actions, Defendant argues that each decision is supported by a legitimate business reason, and Plaintiff cannot show the reason was pretextual. Defendant offers undisputed evidence showing that, during their meeting on January 29, 2018, Copeland extended Ridenour's suspension pending an investigation into a fourth customer complaint. (ECF No. 105-1 at 129.) Plaintiff fails to offer any evidence that the decision to suspend him pending an investigation was a pretext for retaliation.

As to the remaining two adverse employment actions—DeFehr's investigation for Ridenour being "out of route" and his termination for being "out of route"—Defendant offered undisputed evidence showing that Ridenour violated AT&T's company policies when he left work without authorization on February 26, 2018 to complete the online training from home. Defendant also offered undisputed evidence that Ridenour's conduct was part of a pattern of disciplinary actions for "being out of route" in March, September, and December of 2017.[13] Ridenour fails to meet his burden to show that the reasons offered served as a pretext for retaliation.

In his Response, Ridenour disputes Defendant's evidence that he left work on February 26, 2018, without permission, asserting that he was: "given verbal permission to take [his] devices (iPad & iPhone) home, but just that first night. And, instructed to complete [his] training that [he] would find in [his] company email," which he "eventually did." (ECF No. 107 at 10.) However, Ridenour testified in his deposition that no one explicitly told him he could leave to complete the online training from home, but he inferred from the discussion that he had "implied consent" to do so. (ECF No. 105-1 at 51-53.) Moreover, in his response to a request for admission, Ridenour stated that he

---

[13]As noted, Ridenour disputed the allegation that he violated AT&T's policies by being "out of route," asserting that he was preparing for the next customer call and that AT&T's GPS data may have been inaccurate. However, he did not submit evidence that he offered these explanations to challenge the disciplinary decisions at the time.

does "not have any 'documented' communications evidencing that Greg DeFehr, or anyone else, granted [him] permission to go home to complete my trainings upon my return from suspension." (*Id.* at 88.) Ridenour cannot rely on his self-serving statement in his Response to contradict his testimony under oath to create an issue of fact. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy, et al. v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Here, Ridenour offered his assertion that he left work on February 26, 2018 with prior authorization in his response to the Motion. Regardless, Ridenour cannot rely on his unsupported statement to create a factual dispute. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (stating that uncorroborated, self-serving testimony, alone, does not create a genuine issue of material fact precluding summary judgment); *see also Korkosz v. Clark Cty.*, 379 F. App'x 593, 596 (9th Cir. 2010) (holding that evidence based on plaintiff's "uncorroborated, self-serving speculation" is insufficient to show an employee's nondiscriminatory reason is pretextual). Even construing Ridenour's testimony in the light most favorable to him as the non-moving party,[14] Ridenour's evidence offers an explanation as to why he left work on February 26, 2018, but it falls short of showing that the legitimate reasons for the discipline and termination served as a pretext for retaliation.

In sum, the Court finds that Ridenour fails to meet his burden in opposing summary judgment. The Court will grant the Motion as to Plaintiff's retaliation claim.

### B. Fraud Claim

A fraud claim under Nevada law requires the plaintiff to establish: "(1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiff's justifiable reliance, and (5) damages." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482

---

[14] In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

P.3d 665, 675 (Nev. 2021) (citation omitted). Defendant argues that Plaintiff cannot establish that a false statement was made or that he justifiably relied on the representation. As noted, the Order allowed Plaintiff to proceed on his fraud claim based on the allegations that, at 3:30 p.m. on February 26, 2018, DeFehr directed him to complete three online trainings at home and instructed him not to dispatch any jobs or tickets that day; however, DeFehr later accused Ridenour of "being out of route" for leaving work to go home on the 26th. (ECF No. 53 at 9-11.) Notwithstanding, Ridenour testified that no one explicitly told him he could leave work to complete the online training from home; rather, he inferred that he had "implied consent" to do so. (ECF No. 105-1 at 51-53.)

Accordingly, the undisputed evidence does not show that DeFehr falsely represented to Ridenour that he could go home to complete the required training from home, and Plaintiff's reliance on implied consent is not justifiable. For this reason, the Court grants the Motion as to the fraud claim.

### III.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion, as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's Motion for Summary Judgment (ECF No. 105) is granted.

It is further ordered that Defendant's motion to seal (ECF No. 104) is granted in part and denied in part. However, the Court directs Defendant to file a redacted version of some exhibits and the Motion—as specified herein—within seven days from the date of entry of this order.

///

///

///

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 3rd Day of June 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE